Rine v. Rine.

---

PHILIP S. RINE, APPELLEE, v. JOHN A. RINE, ADMINIS-
    TRATOR, ET AL., APPELLEES; LOUISE STEINACKER ET
    AL., APPELLANTS.

LAURA RINE, APPELLEE, v. JOHN A. RINE, ADMINISTRATOR,
    APPELLEE; LOUISE STEINACKER ET AL., APPELLANTS.

LAURA RINE, APPELLEE, v. LOUISE STEINACKER ET AL.,
    APPELLANTS.

FILED JULY 1, 1916. No. 19523.

1. Wills: ORAL CONTRACT: SPECIFIC PERFORMANCE. "Where a party orally contracts to devise and bequeath to another certain real es-

100 Neb.—15

tate and money in consideration that the beneficiary shall assume a peculiar and domestic relation to the promissor, and render him services of a character to make it practically impossible to estimate their value by any pecuniary standard, and the beneficiary, in reliance upon the oral promise, in good faith assumes the relation and fully performs her part of the agreement, she will be entitled, in the event of a breach of the contract by the promissor, to a specific performance of the same as made." *Lacey v. Zeigler*, 98 Neb. 380.

2. **Witnesses:** Competency. Counsel for plaintiff are not disqualified as witnesses under section 329 of the Code (Rev. St. 1913, sec. 7894), since neither of them has a "direct legal interest."

3. ———: ———. A witness is not disqualified merely because of the fact that he is the son of a party. Relationship to the adverse party may affect his credibility but not his competency as a witness.

Appeal from the district court for Dodge county: George H. Thomas, Judge. *Affirmed.*

*S. L. Geisthardt,* for appellants.

*Frank Dolezal* and *E. P. Smith, contra.*

Hamer, J.

Carl Hembeck, a resident of Dodge county in this state, and in his lifetime an owner of considerable real and personal property therein, died in 1904, leaving no widow and without issue surviving him. He made a will which was duly probated, and which, after setting aside $2,250 in trust for the payment of specific legacies, which were to be paid after the death of his wife, Bertha Hembeck, gave her the income from the sum put in trust and made her as well his residuary legatee. The said sum of $2,250 was to be divided evenly between Louise Steinacker, William von Gahlen, and William Grunewald, the niece and nephews of the testator, and residents of Germany. This will was executed in 1896, Mrs. Hembeck, the wife of the testator, died about a year prior to the death of her husband.

Action was begun by Philip S. Rine in 1904, in the nature of a bill of interpleader, alleging that he was the owner of certain land in Dodge county upon which Carl

Hembeck, deceased, had held a mortgage, and alleging that the administrator of said Hembeck's estate claimed the mortgage and its proceeds, and that Laura Rine claimed to own the mortgage by virtue of a contract with the said Hembeck, and praying. that defendants interplead and establish their right to the mortgage. Laura Rine answered, claiming the mortgage by virtue of a parol agreement with the said Hembeck to the effect that she should look after and take care of the said Hembeck and his wife, and look after their comfort during the lives of each of them; that she should receive the entire estate of the said Carl Hembeck upon the death of the survivor of the said Hembeck and his wife. Service by publication was had upon the defendants Steinacker, von Gahlen, and Grunewald, and upon default the case went to decree June 27, 1904, a decree being entered in favor of Laura Rine, and finding that she was the owner of the mortgage in question by virtue of thé contract. On June 24, 1909, the defendants von Gahlen, Grunewald, and Steinacker answered and asked to have the decree set aside. In *Rine v. Rine,* 91 Neb. 248, we decided that the decree should be set aside and the defendants named permitted to make their defense. Upon a trial of the issues raised by their answers, the district court has again found in favor of Laura Rine upon the alleged contract, and the defendants have challenged the correctness of that finding by this appeal, and now allege that there is not sufficient competent evidence to support the decree.

The other cases involved herein concern the title to real estate owned by the said Hembeck. The cases were tried together and decrees rendered in all of them in favor of Laura Rine upon her alleged contract. In determining whether such a contract as that alleged was made by the parties, it is proper to consider the relations existing between them. Laura Rine was the niece of Mrs. Hembeck. Mr. and Mrs. Hembeck through the greater part of their lives were childless, no child surviving infancy. Laura Rine's mother, a sister of Mrs. Hembeck,

died when Laura Rine was a child about ten years of age. From that time until she reached maturity and married, her home was made with the Hembecks. This period was about ten years. Shortly after her marriage the Hembecks retired from the farm and moved into the city of Fremont. This was in 1875 or 1876. From this time until 1889 Mrs. Rine and her husband resided on a farm. Mr. Rine was extensively engaged in farming and in the stock business. During this period the relationship between the families seemed to have been as intimate as possible under the circumstances. Whenever the Rines went from the farm to Fremont the Hembeck house was made their home. Philip S. Rine testified: "Well, we drove there every time anybody came in, the first thing we drove there. * * * They would not let us go anywhere else. We made it our home when we came to town. I would put my horses in the livery barn and we would always take dinner there. Q. In the way of bringing in supplies from the farm, what was done by you folks? A. Well, whenever we came in we brought them things to eat. When we butchered I took them in a lot of meat, sausages, I always made a lot of sausages. Of course, we gave them anything we had." The Hembecks treated Mrs. Rine as their child and referred to her as their girl.

Such a contract as the one involved may be enforced when the services which are the basis of the contract have been rendered and the value of them cannot be accurately measured, and it would be unjust not to enforce the contract. Many decisions of this court have recognized this rule. *Kofka v. Rosicky,* 41 Neb. 328; *Moline v. Carlson,* 92 Neb. 419; *O'Connor v. Waters,* 88 Neb. 224; *Lacey v. Zeigler,* 98 Neb. 380.

In the case last cited, it is said in paragraph 2 of the syllabus: "Where a party orally contracts to devise and bequeath to another certain real estate and money in consideration that the beneficiary shall assume a peculiar and domestic relation to the promissor, and render him services of a character to make it practically impossible to

estimate their value by any pecuniary standard, and the beneficiary, in reliance upon the oral promise, in good faith assumes the relations and fully performs her part of the agreement, she will be entitled, in the event of a breach of the contract by the promissor, to a specific performance of the same as made."

It is required, however, in such cases as those which we have cited, that the evidence in support of the contract shall be clear and convincing. It is contended by appellants that no such proof has been furnished in support of the contract. A number of witnesses were sworn who testified to conversations had with the deceased Hembeck and his wife. Frank Dolezal, attorney for Mrs. Rine, testified to the substance of the testimony of a Mrs. Gortz, a witness who was deceased at the time of the present trial, but who testified at the trial in 1904. The substance of her testimony is that in a conversation with Mr. Hembeck about an improvement which he was making to part of the property involved herein she, Mrs. Gortz, had said to Hembeck that the improvement ought to be extended; that Hembeck told her he would not do it, that the property was Mrs. Rine's after his death, and if she wanted to complete the improvement she could; that there was an arrangement that it was Mrs. Rine's property after he died. This conversation occurred after the death of Mrs. Hembeck.

John A. Rine, the son of Philip and Laura Rine, testified to the friendly relations existing between the Hembecks and his mother; that his mother was very frequently in their home, attended them continually, "and whenever they were sick she would be down there continually and would not be home at all;" that Mr. Hembeck told him of their affection for his mother as a little girl, and "when in later years she got married they would come to town and how they longed for their girl and tried to get her to move to town to look after and take care of them and be close to them, and how my father at the time did not want to come to town and how he ob-

jected and how finally they induced him to come. They promised him that Laura would be recompensed; that when they died their property would go to her. * * * I think he said that when they moved to town here they were alone, their girl—they referred to Laura as their girl—was out in the country, and they wanted to have her near them, and they tried to get them to move to town. Father didn't want to, but finally they induced my mother to come to town so they would be taken care of, and they promised that when they died she would have the property when they died." Other conversations of a similar character are related by the witness.

A. N. Yost tells of conversations he had with Mr. and Mrs. Hembeck, the substance of which was that they had induced Mr. and Mrs. Rine to move to town; that Mrs. Rine took good care of them, and that she understood that she was to have the property after their deaths. Philip Rine's testimony is of the same purport. It is further shown that, at the time Mr. and Mrs. Rine left the farm, Mr. Rine was conducting an extensive farming and stock business which was abandoned by reason of the change. It clearly appears that Mrs. Rine was faithful to the Hembecks in all things, and that she gave them the care and attention which they desired.

It is objected, however, that the witnesses Dolezal, John Rine and Philip Rine are incompetent witnesses to the conversations with Mr. Hembeck under section 329 of the Code. Dolezal is an attorney for Philip Rine in the action to determine the ownership of the mortgage, and for Mrs. Rine in her actions to quiet title to the real estate. This does not disqualify him as a witness. He has no "direct legal interest." He testified that he had no such interest in the result of the trial. His testimony touching what Mrs. Gortz had testified to on the former trial was not of a transaction between the witness and a deceased person.

John A. Rine has no "direct and legal interest" in the result of the controversy. As the son of Mr. and Mrs.

Rine, a recovery by either of them vests no title in him. It is likewise difficult to see how, as administrator, he has an interest which disqualifies him. Relationship to the parties interested, while a proper subject to consider as affecting the credibility of a witness, does not affect his competency. Jones, Evidence (2d ed.) sec. 778: "Relationship to the adverse party, if without interest in the result of the suit, affects the credibility but not the competency of a witness testifying as to transactions or communications with deceased or incompetent persons."

Objection is made to the competency of the testimony of Philip Rine upon the ground that as the husband of Laura Rine he has an interest in the real estate which disqualifies him. Without determining whether this objection is well taken, it is enough to say that he had no such "direct legal interest" in the disposition of the personal property, the mortgage, as to disqualify him, and his testimony was properly received. In any event there is sufficient proof without his testimony to sustain the findings of the trial court, so that its admission, if error, is error without prejudice.

The Hembecks were elderly people at the time Mr. and Mrs. Rine moved to Fremont. Mr. Hembeck is shown by the evidence to have been about 74. His wife was somewhat younger. Laura Rine stood to them much as a child. It was very natural for them to want her near them. No circumstance, except the making of the will, tends to dispute the claim of Mrs. Rine, nor is that circumstance so inconsistent with her claim as at first appears. The testator doubtless expected his wife, who was younger than he, to survive him. The devise to her was consistent with the agreement that Mrs. Rine was to have the property after their deaths. The bequest to his niece and nephews represented no very considerable proportion of his estate. In any event the contract is clearly established and was faithfully performed by Mrs. Rine.

The judgment of the district court is

AFFIRMED.

ROSE, J., not sitting.