EDWARD REMALY, APPELLANT, V. CHARLES A. SWEET, AD-
MINISTRATOR, APPELLEE.

FILED JUNE 23, 1921.  No. 21280.

1. **Specific Performance**: PAROL CONTRACT: PROOF.  When it is al-
leged that an oral contract has been entered into between plain-
tiff and another, and it appears that the party to be charged died
without fulfilling the alleged terms of the contract, and it is also
alleged that the contract provided that a farm owned by the al-
leged donor, since deceased, upon his death, should become the
property of the alleged donee, the plaintiff herein, such contract,
to be enforceable in equity, must possess the element of certainty,
and the proof to establish the contract must be clear, convincing,
unequivocal and satisfactory.

2. ———: ———: ———.  The record examined, and *held* that the
evidence does not possess the element of certainty that is re-
quired to establish an alleged parol gift of land.

APPEAL from the district court for Otoe county: JAMES
T. BEGLEY, JUDGE.  *Affirmed.*

*Fawcett & Mockett* and *D. W. Livingston,* for appellant.

*Pitzer, Cline & Tyler, contra.*

Heard before LETTON, DAY, DEAN and FLANSBURG, JJ.

DEAN, J.

This is an action to cancel a deed executed by John

Michael, shortly before his death in March, 1917, wherein the title to a quarter section of land in Otoe county was conveyed to George I. Davidson, a nephew of decedent. For the reasons hereinafter appearing, plaintiff prayed that the title be quieted in himself. Defendant obtained judgment, the suit was dismissed, and plaintiff appealed.

Plaintiff alleges generally that, for many years before Michael's death, he was a tenant living on Michael's farm; that "the said John Michael and plaintiff, about the year 1892, entered into a verbal agreement that in consideration of the kindness of plaintiff and his wife, and the services they had rendered him prior thereto, and which plaintiff agreed that he and his wife would continue to render thereafter, he, the said John Michael, would by will devise to plaintiff the quarter section of land upon which plaintiff was then residing, * * * in said Otoe county, Nebraska. And plaintiff alleges that he and his wife faithfully kept and performed their part of said agreement. They ever remained his true friends and always did everything in their power to contribute to his happiness and comfort, and as long as he lived their home was his home, to which he was always free to come and go as it pleased him." It is averred generally that plaintiff and his family cared for decedent as one of their own family for 12 or more years; that plaintiff's family did Michael's washing, mending and baking and house-cleaning when he lived in his own home alone, he having divorced his wife in 1885; that while plaintiff was a tenant on the land in suit he helped Michael to build a house thereon; that he dug the cellar and the like and boarded the workmen without charge; that he made fences and dug ditches on the farm; that plaintiff moved to Lincoln in 1910, where he has ever since resided; that Michael came with him and lived in his home as one of the family; that when Michael was sick in a Lincoln hospital plaintiff's family took delicacies to him; that all such services were rendered without remuneration and in fulfilment of the alleged agreement that decedent would, by his will, give to plaintiff the

farm in suit; that plaintiff fully performed his part of the contract, but that Michael, shortly before he died, in violation of his contract with plaintiff, conveyed the land to a nephew.

At this point the relations that existed between Michael's family and plaintiff's family for many years may be noticed. It seems that the two families were near neighbors in Pennsylvania, and that early in the seventies Michael left his Pennsylvania home and came to Nebraska for the purpose of filing on government land. He came alone, leaving his wife and his aged parents in Pennsylvania, expecting them to join him here at a later period. Plaintiff avers that, soon after Michael came to Nebraska, "it was arranged between said Michael and plaintiff that plaintiff and his family should come west with the wife and parents of said John Michael, so that they could all be together and continue the close friendship which had theretofore existed between them;" that, as an inducement to plaintiff to come to Nebraska, Michael agreed that, if he would do so, he would furnish plaintiff with a quarter section of land and the stock to farm it; that in reliance upon such agreement, together with his close friendship for Michael, plaintiff moved to Nebraska with his family, bringing Michael's wife and his aged parents with him, "plaintiff having charge of said party and arranging the details of their departure and looking after the welfare of the entire party during the trip west;" that upon arrival in Nebraska he resided in a log house on Michael's land about four or five months, when he concluded that he would leave the farm and work at his trade as a plasterer and a brick-layer, "the said Michael consenting to release him from their agreement that he should go upon a quarter section of the said Michael's land;" that he left the land and resided at Lincoln for about eight months, and then removed to Hickman, about 14 miles from Michael's home, where he continued to reside and work at his trade for five or six years; that Michael then "requested plaintiff to quit working at his

Remaly v. Sweet.

trade and devote himself to farming, and offered to rent plaintiff all of the farm land then owned by said Michael," consisting of about three quarter sections; that Michael, as rent for the land, was to receive one-third of the crops; that he accepted Michael's offer about 1882, and moved upon and continued to reside on and cultivate the land for about 22 years. The alleged verbal agreement with Michael that plaintiff relies on was entered into, as he avers, about 10 years after he began farming on Michael's land as a tenant, namely, in 1892. No witness, however, has testified that he was present when the alleged contract was made, nor are there any letters in the record nor any writing whatever by any person to support plaintiff's contention with respect to the alleged contract.

The evidence of both parties is voluminous and we cannot set it out in detail. Five or six witnesses testified on the part of plaintiff, upon whom he relies to establish the averments of his petition. One of these gave his deposition. The witnesses called by plaintiff were, in part, persons who were old-time friends and neighbors of plaintiff, and they testified respecting remarks that were attributed to Michael, which were to the effect that plaintiff and his family had been good to him; that he intended to give land to plaintiff, and the like. It does not appear that any of these statements were made in Remaly's presence. In view, however, of the relations between Michael and plaintiff, and in view of the allegations of his petition respecting the inducement offered by Michael to plaintiff that if he would come to Nebraska he would furnish him with land and with stock to farm the land, it appears that there might be some confusion in the memory of the witnesses with respect to the language that they attributed to Michael. The testimony here, as in all cases of this character, where one of the parties to the alleged contract is dead, must be construed most strongly against the party who seeks to establish the contract. And this for the very good reason that the other party is dead.

The evidence shows that Mr. Michael was an extensive

landowner and that he owned a large amount of personal property.   On the part of defendant it was shown that he was not given to talking much about his business affairs; that for six years or more after Michael divorced his wife she lived in his home in the capacity of housekeeper caring for the children of whose custody she was deprived when Michael divorced her.   Subsequently she married, and Michael and two of his sons were left alone.   For many years Mr. Michael spent his winters in the south, on the gulf coast, or in California, as the case might be.   While he was for the most of his life strong and robust and without the need of an attendant, nevertheless, in the latter part of his life, on account of failing eyesight, he employed a secretary to accompany him on his travels.   On one occasion he toured Europe taking with him one of his sons. It was shown that he was a liberal man and inclined to give generous gifts to his friends.   It appears that he made loans to plaintiff from time to time and released the obligations without exacting payment; one of the loans so released being in the sum of $2,000.   This loan was evidenced by a note secured by mortgage.   In 1909 Michael made a will, which he revoked or destroyed about two years thereafter.   About this time he said to one or more persons that before the end came he intended to dispose of all of his land by deed.   There is evidence tending to prove that in 1915, shortly before he made one of his periodic trips to California, he settled his board and lodging account with Remaly and gave him a check for $200 in settlement.   It was about this time that he surrendered two notes to the Remalys, one executed by plaintiff and one by plaintiff's daughter, no consideration passing from them for such release.   On this, or a similar occasion, a witness testified that plaintiff said to Michael, in substance, that he was well satisfied with the generous manner in which Mr. Michael treated him in their various settlements.

It appears that Michael built a house on one of his farms for the accommodation of plaintiff's family, the house

formerly occupied by them being insufficient to properly house them. With respect to the building of the house in question, plaintiff contends that the work that he did thereon and the board that he furnished for the men was all without remuneration, and that such work and the board so furnished were all to be considered as a part fulfilment of the contract that he pleads. It is well known that in some farming communities it is a custom for a landlord who has a satisfactory tenant, perhaps for a term of years, to furnish the material and build a house on condition that the tenant make the excavation for the cellar and furnish such personal help as he can toward the erection of the building. But there is evidence tending to prove that a $600 note was released by Michael to reimburse Remaly for work that he had done, and for board, about the time the house was built in which the Remalys lived.

It may be added that, on plaintiff's part, there is evidence tending to prove that Michael, for many years before his death, frequently called at the office of a prominent lawyer, who was his counsel, and that there was some conversation between them with respect to Michael's alleged intention to give a farm to Remaly. But it does not appear in the record that Michael's counsel was consulted by him at any time with respect to such legal procedure, or with respect to the drawing of some written instrument, that it might be advisable to employ, in order to make effective and to make certain so important and so unusual a transaction as the gift of a quarter section of Otoe county farm land to one who was a stranger to the donor's blood. It seems to us that Mr. Michael, man of affairs that he appears to have been, would have consulted counsel on a subject of so great importance if such an intention was seriously entertained by him.

From a review of the record, we do not think the case comes within the rule of *Kofka v. Rosicky*, 41 Neb. 328, nor does it come within the meaning of subsequent cases bearing on the same subject. On this question we have

Frye v. Omaha & Council Bluffs Street R. Co.

uniformly held that the evidence to establish a parol contract of the sort involved here must be clear, convincing, unequivocal and satisfactory, and that such evidence must be referable solely to the contract as made. Clearly the proof in the present case does not come within the rule to which we are committed.

It is not out of place to say that the record does not present a situation where, if the alleged parol contract is not sustained, the plaintiff would be deprived of remuneration for the services that he contends he performed for decedent, he having received from Michael, in the form of loans that were not repaid, but were canceled, sums approximating $3,000 or more.

Upon examination of the record, we conclude that the district court did not err in dismissing the action. The judgment of the district court is therefore in all things

AFFIRMED.