Hajek v. Hajek.

FRANK HAJEK, JR., APPELLEE, V. MARY HAJEK ET AL., DE-
FENDANTS: ALICE FULLER ET AL., APPELLANTS.

FILED MAY 6, 1922.   No. 22075.

Specific Performance: ORAL CONTRACT: EVIDENCE: PART PERFORM-
ANCE.  In an action for specific performance of an oral agreement
with a person now deceased to convey land, the terms of the con-
tract must be established by evidence that is clear, convincing and
satisfactory; but in a case where there is direct testimony to the
making of the contract, and also clear and undisputed testimony
as to part performance by the person to whom the property was
to be conveyed, a court of equity may properly enforce the con-
tract to convey.

APPEAL from the district court for Hayes county:
CHARLES E. ELDRED, JUDGE. *Affirmed, as modified.*

*Hoagland & Carr* and *P. W. Scott,* for appellants.

*C. A. Ready, C. D. Ritchie* and *Stewart, Perry & Stewart,*
contra.

Heard before MORRISSEY, C. J., LETTON, ROSE, ALDRICH
and FLANSBURG, JJ.

LETTON, J.

The purpose of this suit is to procure specific perform-
ance of a contract which plaintiff alleges his father, Frank
Hajek, now deceased, made with him, upon a valid consid-
eration, to convey to him a certain tract of land.   Defend-
ants are the widow, the administrator, and the other heirs
of deceased.   The court awarded specific performance. De-
fendants appeal.

The evidence shows that in September, 1913, when plain-
tiff was over 21 years old, a contract of purchase and sale
was made between one Karre and Frank Hajek, deceased,
for the purchase of a section of land in Hayes county.   The
price was $13,000; $1,000 was paid in cash, and the balance
was to be paid in annual payments, the last falling due on
April 1, 1919.   The scrivener, who drew the contract, testi-
fied that the purchaser, Hajek, Sr., desired the mortgage

to secure the deferred purchase money drawn so as to cover only one-half section of the land, saying that "he wanted the east half of it for Frank, his son, and he did not want the contract made so that it would be all to him." Mr. Karre testified that the first conversation about the land was at a sale when Frank Hajek, Sr., wished to purchase from him the east half of section 14; that he said, "I will buy that for Frank;" that he told Hajek he would not sell a half section, and Hajek then bought the whole of section 14; that afterwards Hajek wanted two separate deeds made, one conveying the east half of the section to plaintiff, and the other the west half to himself, and wanted the mortgage made upon the west half section; that Hajek said the boy had earned the land, but witness told him he had to protect himself, and that he refused to accept a mortgage on the half section alone as security. It seems that during the war there was a rumor that the son had been killed, and Hajek then told the witness he had bought the land on purpose for his son, and that now he was killed and everything was gone. Testimony is given, as to these and other statements and declarations of deceased, by other witnesses having no interest in the controversy. The east half of the section was spoken of by deceased and by other members of the family as "Frank's land." One who wished to rent the house on the land was told by the father to see Frank, that he owned it. He also told the assessor that the land belonged to Frank. It is admitted that $490 of the compensation to plaintiff from the government for military services was received by the father and applied upon the purchase price.

The most direct and definite testimony as to the contract is that of Mrs. Hajek, the widow of deceased, who testified that, when the father found he would have to buy the whole section in order to obtain the east half, he came home, and an agreement was then made between Frank and his father that Frank should stay at home and help him pay for this land, and that when it was paid for he would deed it to Frank; that Frank did stay until he was

called to service, and has been home ever since.

It is admitted that certain other witnesses would testify, if present, that they heard the father state that the land in controversy was bought for the son, Frank, had been earned by him, and had been designated as his.

The testimony on the part of the defense does not militate very strongly against that produced by the plaintiff; in fact, some of it corroborates that of plaintiff's witnesses. The fact was elicited that after the plaintiff came home from France he worked for his brother-in-law, Fuller, upon this particular tract of land for two months for wages, but it is shown that Fuller had become a tenant of it in plaintiff's absence, and that plaintiff is now in possession, cultivating the land.

A direct and distinct agreement was made that if the son, an adult person, would remain upon the farm, and apply his earnings to the payment of the mortgage debt, the father would convey the land to him when the mortgage was paid. The undisputed evidence shows that the father intended to have the conveyance made to plaintiff by Mr. Karre at the time the deed and mortgage were executed, but that this was not done on account of the refusal of Karre to accept a mortgage upon one-half of the section of land purchased. The plaintiff carried out his portion of the contract by contributing his services, remaining upon the land until he went into the service of the United States, and devoting what appears to be the greater part of his compensation while in the service to the purpose of carrying out his contract. When he returned he resumed performance.

These facts bring the case within the rule of *Kofka v. Rosicky*, 41 Neb. 328; *Peterson v. Estate of Bauer*, 76 Neb. 661; *Harrison v. Harrison*, 80 Neb. 103; *Rine v. Rine*, 100 Neb. 225; *Warnick v. Warnick*, 107 Neb. 747. It is not clear from the evidence that the mortgage has been paid in full. The petition prays for specific performance of the contract to convey the land free and clear of all incumbrances. The decree makes no reference to the incumbrance,

and hence plaintiff takes the land subject to whatever liens there may exist upon it. He makes no complaint of this.

Complaint is made with respect to the competency of some of the witnesses. It is said Mrs. Hajek was incompetent as a witness, under section 7894, Rev. St. 1913, relating to transactions with a person now deceased. Mrs. Hajek did not testify to any transaction that she had with the deceased, but merely related a conversation, which she heard, in which she took no part. This is not prohibited by the statute. *Kroh v. Heins*, 48 Neb. 691; *In re Estate of Powers*, 79 Neb. 680; *McNea v. Moran*, 101 Neb. 476. There was no error in the reception of this testimony; nor was there error in the reception of the testimony of the other witnesses who, it is argued, were not competent to testify.

We adhere to the views expressed in *Remaly v. Sweet*, 106 Neb. 327, and *Overlander v. Ware*, 102 Neb. 216, that such an alleged contract must possess the element of certainty, and the proof to establish it must be clear and satisfactory; but, when all the evidence in this case is taken into consideration, these requisites have been supplied, and the decree, so far as it awards specific performance, is affirmed.

Complaint is made that the decree as to costs operates to compel the adult defendants to pay the fee of $50, allowed to the guardian *ad litem* of the infant defendants. The decree in respect to costs is as follows: "That the plaintiff recover from the defendants Alice Fuller and Agnes Viersen their costs herein expended, taxed at $——; that there be and hereby is allowed an attorney's fee for the guardian *ad litem*, in the sum of $50, to be taxed as a part of the costs of this proceeding."

We do not understand this to mean that the costs of the infant defendants are taxed to the adult defendants. The decree provides that plaintiff shall recover from the adult defendants "their costs." It should be corrected to read as follows: "That the plaintiff recover from the adult defendants, except guardian *ad litem* fees, *his* costs herein

expended, taxed at $————.'' The theory of the taxation of costs is that each party pays his own costs as they are incurred, and that the successful party recover his costs from the unsuccessful party. He is not entitled to a judg-ment for the defendants' costs, but only for his own. The guardian *ad litem* fees in this case may properly be said to be costs of the plaintiff and should be paid by him. These costs were not necessitated by the adult defendants, nor could they have been obviated by them.

It is therefore ordered that the plaintiff pay the guardian *ad litem* fees and that he shall not be allowed to recover such fees from the defendants.

The decree as to costs is modified, and otherwise is af-, firmed.

AFFIRMED AS MODIFIED.