CAROLINE WARD, APPELLEE, V. WILLIAM J. HISLOP ET AL., EXECUTORS, ET AL., APPELLANTS.

FILED NOVEMBER 10, 1931. No. 27953.

16

 

 

*Battelle, Travis & Strehlow,* for appellants.

*Wear, Moriarty, Garrotto & Boland, contra.*

Heard before ROSE, GOOD, DAY and PAINE, JJ., and BEGLEY, District Judge.

GOOD, J.

In this action plaintiff seeks specific performance of an alleged oral contract to devise realty and bequeath personalty to her. Defendants are the next of kin of Mary Ellen Voorhees, deceased, executors of her last will and testament, and legatees mentioned in said will.

Plaintiff alleged that in December, 1900, Mr. and Mrs. Voorhees requested of plaintiff's parents the privilege of taking the plaintiff with them to live as their child, and that plaintiff's parents consented to such request and allowed Mr. and Mrs. Voorhees to take the plaintiff on the following expressed conditions: That plaintiff's parents would give to Mr. and Mrs. Voorhees her custody, care and control, in consideration and on agreement that Mr. and Mrs. Voorhees would receive said child as their own, care for her, rear and educate her, and that at their death the plaintiff should receive their entire estate, including all the real and personal property of which they might die possessed. Plaintiff averred that she went to live with Mr. and Mrs. Voorhees at the time and on the terms mentioned aforesaid, and continued to live with them uninterruptedly until they died; that Mr. Voorhees died on the 5th of February, 1925, and Mrs. Voorhees on the 27th of April, 1930.

Defendants denied the making of the oral contract and denied that plaintiff had performed her part of the alleged contract by continuously living with the Voorhees family as a daughter. The trial court found for plaintiff and entered a decree awarding plaintiff one-half of the estate of Mrs. Voorhees. Defendants have appealed.

At the outset it may be observed that, if the contract was made, as alleged, it is of doubtful validity. Mrs. Voorhees was at that time a married woman. There is no showing that she then possessed any separate estate, and the evidence fairly shows that the bulk of the estate which she left came to her under the will of her husband 25 years later.

This court has frequently held: "The contract of a married woman can only be enforced against the separate estate which she possessed at the date of the contract." *Kocher v. Cornell,* 59 Neb. 315. See *Grand Island Banking Co. v. Wright,* 53 Neb. 574; *Marsh v. Marsh,* 92 Neb. 189; *Giltner State Bank v. Talich,* 115 Neb. 236. However, since that question was not raised or discussed in the briefs or on oral argument, we refrain from determining the question in the instant case.

At the date of the alleged oral contract, plaintiff was 16 years of age, and Mr. and Mrs. Voorhees had no children of their own. The only witness who testified to the alleged contract was a sister of the plaintiff. According to her testimony, plaintiff, for about two weeks prior to the date of the alleged contract, had been staying in the Voorhees family. With their mother, plaintiff and witness went to the Voorhees home, when, as testified by her, the following occurred: Mrs. Snyder (plaintiff's mother) "wanted Carrie (the plaintiff) to come home with her." The mother said: " 'You know Dad and Carrie don't get along,' and Mrs. Voorhees spoke up and said, 'Let her stay with us, make her home with us;' and she turned to Mr. Voorhees, whom they called Dad, and said, 'We would like to have her stay with us, wouldn't we?' and he said, 'We sure would.' " Mrs. Snyder said: "I would like very much to have Carrie come home with me, but if she does not want to, and you will promise that you will take care of her, she can stay." Mrs. Voorhees answered: " 'Dad, when we are gone,' she said, 'everything we have will be left to Carrie and Lester, and I will leave one dollar to my brother,' to which Mrs. Snyder said, 'All right, then, I will trust that you take care of Carrie, and I will leave her.' "

The foregoing constitutes the direct evidence of the contract. A number of witnesses testified to subsequent conversations with Mrs. Voorhees, in which she referred to plaintiff as her daughter, and to statements that when she was gone everything would belong to plaintiff. At another time, when the home was being repaired, Mrs. Voorhees is alleged to have said to plaintiff: "You go ahead and fix the house to suit yourself, as it is going to be yours." There is considerable evidence on behalf of plaintiff to the effect that thereafter plaintiff stayed and made her home with the Voorhees family.

On the other hand, there is evidence that the Voorhees home, at that time and for several years subsequently, was a bungalow, with six rooms, and having three bedrooms; that two young men, or boys, for one of whom Mr. Voorhees was guardian, were staying in the Voorhees home; that Mr. and Mrs. Voorhees occupied one of the bedrooms and each of the boys occupied another; that plaintiff did not stay at the Voorhees home, but was there occasionally, working and helping Mrs. Voorhees with the housework. There is evidence that plaintiff worked out as a seamstress, and spent considerable time in Sioux City, Iowa, but made occasional visits to the Voorhees home; that she worked at other times, earning wages, and purchased her own clothing. Mr. Voorhees died in 1925, and left a will, dated two or three years after the date of the alleged contract, in which he devised and bequeathed all of his property to Mrs. Voorhees. Mrs. Voorhees made a will in 1926, in which she devised to plaintiff the residence property, in which she was then living, valued at, perhaps, $3,000, together with some articles of personalty, and devising and bequeathing the remainder of her property to charitable institutions and various persons. Two or three years later she made another will, in which she left nothing to the plaintiff, but did make a substantial bequest to plaintiff's daughter, and bequeathed the remainder of her property to charitable institutions, relatives and various other persons. It also appears that Mrs. Voorhees was rather close in money matters. It may be said that the statements,

which would constitute the oral agreement, if made, were without any deliberation; were made upon the spur of the moment, and would cover all the property which Mr. and Mrs. Voorhees possessed, amounting in value to from $40,000 to $60,000. The time consumed during the conversation would be less than two minutes. It would be a remarkable and very unusual circumstance for one of Mrs. Voorhees' disposition, with reference to finances, to make such an agreement, without any deliberation or consultation about it with her husband or with any one else, other than as shown above. Moreover, the evidence of the witness who testified to the contract was contradictory in several respects, and it is noticeable that, although more than 30 years had elapsed, she purported to give the exact conversation that occurred, even stating particularly where in the house each of the persons was, and what each was doing, but, upon subsequent events, her memory was rather vague and uncertain. It would seem improbable that one of Mrs. Voorhees' disposition would make such a contract under the circumstances as detailed in the testimony; but, taken together with all the other evidence in the case, it falls far short of meeting the requirements of the well-established rule in this state. This court has frequently held that contracts of this character may be sustained only when the evidence thereof is clear, convincing and satisfactory. *Labs v. Labs,* 92 Neb. 378; *Overlander v. Ware,* 102 Neb. 216; *Powers v. Norton,* 103 Neb. 761; *Remaly v. Sweet,* 106 Neb. 327; *McEntarffer v. Payne,* 107 Neb. 169; *Young v. Gillen,* 108 Neb. 311; *Hajek v. Hajek,* 108 Neb. 503; *Smith v. Raubach,* 121 Neb. 703. Moreover, the evidence clearly falls short of proving full performance of the contract by plaintiff. The weight of the evidence is that she did not stay at the Voorhees home except at intervals, in the daytime, and occasionally at night when Mr. Voorhees was absent. The evidence given by plaintiff's witnesses does not substantiate the contract alleged in the petition. It also appears that after the death of Mrs. Voorhees plaintiff procured her attorney to write to Lester Dunlevy, seeking to enlist his aid in establishing a contract

whereby the Voorhees property was to be devised to them jointly. There are other acts of plaintiff, as shown by the testimony, that are wholly inconsistent with the existence of the alleged contract.

It follows that the judgment of the district court is erroneous. It is hereby reversed, and the action dismissed.

REVERSED AND DISMISSED.