Agatha M. Goodlett, appellant, v. Helen Banning
et al., appellees.

Filed June 1, 1934. No. 28964.

*Clarence A. Davis* and *Wilber S. Aten*, for appellant.

*Frank A. Anderson, York & York, A. W. Storms* and
*Hamer & Tye*, contra.

Heard before Goss, C. J., Good, Eberly, Day and Paine,
JJ., and Tewell, District Judge.

Tewell, District Judge.

This action was begun in the district court for Phelps
county by Agatha M. Goodlett, as plaintiff, against the
heirs of Asa Lucas, deceased, their respective spouses, and
the administrator of the estate of said decedent. The
object of this action is to obtain specific performance of
an oral contract alleged to have been made between the
plaintiff and said deceased at Hot Springs, Arkansas,
about the month of March, 1912. The contract alleged
is to the effect that the plaintiff should live upon the farm
owned and occupied by said deceased and perform serv-
ices as housekeeper for him until he died, and that in re-
turn for such services said Lucas upon his death would
give to the plaintiff one-half of his estate. Performance
by the plaintiff is pleaded. Lucas died intestate a resi-
dent of Phelps county on May 13, 1932, without having

made any conveyance to the plaintiff. Two brothers, two of the three living sisters, and three children of a deceased sister of the deceased, all of whom are named as defendants, and who claim to be his only heirs, filed a joint answer to the plaintiff's petition and included therein a cross-petition against the defendant Birdie B. Browning, by which it is sought to quiet title to the estate in said cross-petitioners. The defendant Birdie B. Browning, who claims to be a daughter of deceased and his sole heir, filed answer to the plaintiff's petition, and to the cross-petition. The defendant Mary F. Steele, one of the three living sisters of said deceased, made no appearance. The issues tried were only those raised upon the allegations of the plaintiff's petition. The trial court found against the plaintiff and dismissed her petition as against all alleged heirs who filed answer. Decree was entered against defendant Mary F. Steele, granting performance of the contract alleged so far as her interest in the estate might extend. Plaintiff is sole appellant. The issues joined upon the cross-petition are not presented by the appeal.

The sufficiency of the evidence to establish the making of the contract alleged is involved. No evidence was offered by the defendants. The estate of the deceased Lucas consists of several parcels of real estate and also farm implements, live stock and other personal property.

Robert Goodlett, a son of plaintiff, testified that he first met the deceased at Hot Springs, Arkansas, in the winter of 1911, when he was about 12 years old; that the plaintiff moved from Hot Springs, Arkansas, to the Lucas farm in Phelps county, Nebraska, in the spring of the year 1912, and lived there until Lucas died; that he had lived on the Lucas farm with his mother and Lucas continuously from the year 1914 to the date Lucas died. This witness also testified that on September 1, 1931, while he, the plaintiff, and the deceased sat alone in an automobile, near the depot in Kearney, Nebraska, his mother wrote the following upon a blank bank check:

"Sept. 1, 1931. This is to acknowledge Mrs. A. M. Goodlett as my pardner on the farm since April 1912, and has been steady and faithful for which I owe her one-half of my estate."

This son testified that Lucas then signed his name to the check and gave it to his mother. An instrument of such import appears in the record. The portion thereof that precedes the word "which" therein appears upon the back of the check, and the balance thereof upon the face of the check. The name "Asa Lucas" appears on the line prepared upon the check form for the signature of the maker, where it would ordinarily appear if the check form had been signed when blank by Lucas in order to allow any one to complete the check by filling out the blank spaces above his signature. The son, Robert Goodlett, also testifies that in 1925 he read some letters, bearing a date in 1912, that he found in his mother's trunk on the Lucas farm, and that they were in stamped and postmarked envelopes that were addressed to his mother at Hot Springs, Arkansas, and that these letters were in the handwriting of Asa Lucas. This witness testified that the letters stated: "Instead of going to St. Louis, come on up and be housekeeper, and do as we agreed upon, and then go fifty-fifty, and if you stay until he is through with it, to get half of all his property." None of these letters was produced, and both the plaintiff and her son testified that they had searched for them and could not find them.

Mrs. Florence Holzer, a sister of the plaintiff, testified that she with her son and daughter visited the Lucas farm from in January, 1929, to sometime in March, 1929, and that, on account of her desire to have her son stay upon the farm to improve his health, she talked to Lucas, while on a trip to Kearney, Nebraska, alone with him, concerning his consent to the son's stay. This witness testified that in this conversation Lucas said, "If it's all right with Mrs. Goodlett, * * * it's all right with me, because you know the agreement is that she is to get half of everything I own."

Archie Hasbrouck, a neighbor to Lucas from 1915 to the time of his death, testified that about the month of September, 1931, he asked Lucas what he was going to do with his place when he was done with it, and that Lucas said, "Mrs. Goodlett got half of it."

Lew Sealing, a neighbor to Lucas for about 12 years testified that on a trip to Minden, Nebraska, with Lucas, he asked Lucas if Mrs. Goodlett would come in for half of Lucas' property, and that Lucas replied; "Yes; she'll come in for half." This conversation occurred, according to this witness, when he and Lucas were alone, and only a day or two before Lucas suffered the stroke of paralysis from which he shortly thereafter died.

From the testimony of the witnesses heretofore mentioned and from that of others, the evidence fairly establishes the fact that the plaintiff did all classes of work commonly done by a farmer's wife while living upon a farm, and, in addition, on some occasions worked in the fields, did chores, tended live stock, and did other classes of work usually regarded as being only that of a man. No evidence, other than that above outlined, relates to any admissions, declarations or statements of the deceased concerning the making of any such contract as that alleged, or concerning any provisions of such a contract. The son, Robert Goodlett, is shown to have married in 1926 and to have lived upon the Lucas farm with his wife continuously after 1926. At least, from the year 1928 to the date Lucas died, this son operated the farm and paid Lucas a portion of the crop as rent. The evidence does not show what circumstances, financial or social, surrounded the plaintiff at the time the contract is alleged to have been made, and does not show whether or not any payment of money was made to her by Lucas during her stay upon his farm. The plaintiff is not shown to have known Lucas, except for a very short time prior to the date the contract is alleged to have been made. Lucas is not shown to have held any ill feeling toward any persons liable to inherit his property.

In actions of this nature and in which circumstantial evidence is relied upon to establish the contract pleaded, the circumstances shown, in part at least, must be such as refer to the making of such contract sufficiently to establish its making and its terms clearly, convincingly and satisfactorily. 58 C. J. 1203; *Overlander v. Ware,* 102 Neb. 216; *Hajek v. Hajek,* 108 Neb. 503; *McEntarffer v. Payne,* 107 Neb. 169. An examination of the evidence as above outlined will disclose the fact that one could not determine from the evidence what the terms of the contract between the plaintiff and the deceased were, assuming that a contract of some kind was made. The writing upon the bank check, and also the statements made to the witness Hasbrouck, and those made to the witness Sealing, are in no way inconsistent with the non-existence of a contract of any nature. The rule relating to the weight to be given alleged declarations of a deceased in chance conversations is discussed in 58 C. J. 1203, and cases cited in the footnotes thereunder, and in *Johnson v. Kern,* 117 Neb. 536. We do not find sufficient proof of the contract alleged in plaintiff's petition to convince the court that such contract was ever made. Without the plaintiff's petition, the record would not disclose what contract was claimed to exist.

Much space is devoted in the briefs to the question of whether or not sufficient proof of the loss of the letters mentioned in the testimony of Robert Goodlett and sufficient proof of search therefor existed to allow that witness to testify as to the contents of such letters. We have treated the testimony as to the contents of these letters as having been properly admitted, and therefore need not discuss its admissibility.

The decree of the district court is

AFFIRMED.