ALPHA ROGERS, APPELLANT, V. GAYLE CASADY ET AL., AP-
PELLEES.

278 N. W. 267

FILED MARCH 4, 1938. No. 30204.

*William Niklaus*, for appellant.

*Jack Devoe* and *W. A. Robertson, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and
MESSMORE, JJ., and WILLIAM A. DAY, District Judge.

WILLIAM A. DAY, District Judge.

This is an appeal from the district court for Lancaster
county, Nebraska, from a judgment denying the plaintiff
specific performance of an alleged oral contract between
the plaintiff and Fred W. Casady, now deceased, the action
being brought by the plaintiff against Gayle Casady, as son
and sole heir at law of Fred W. Casady and the adminis-
trator of the estate of said deceased, and Matilda Casady,
wife of Gayle Casady.

The plaintiff alleges as her cause of action against the
defendants that in the fall of the year 1932 Fred W.
Casady, by parol agreement, hired the plaintiff as a house-
keeper and nurse to attend the household duties at his
farm home during the remainder of his natural life, and

agreed to give or leave to the plaintiff, as compensation for such services, all of his property, both real and personal, of which he was possessed at the time of his death. She further alleges that she accepted this offer, and devoted all her time and attention to, acting as housekeeper and nurse to said Fred W. Casady until the time of his death on the 2d day of June, 1936. The defendants, for their answer, deny generally these allegations.

The lips of Fred W. Casady having been sealed in death, and those of the plaintiff, Alpha Rogers, having been sealed by the law, the plaintiff offers the testimony of one principal witness, I. E. Wollman, her brother-in-law, in proof of her alleged contract with the deceased. This testimony consisted of three conversations which are alleged to have occurred between the deceased and this witness for the plaintiff. This is the only direct evidence offered as to the actual making of the contract in 1932. The witness Wollman testified that he had been acquainted with Mr. Casady for some time, and that in June, 1932, he had his first conversation with him relative to the employment of Mrs. Rogers, in which Mr. Casady told him that he wished Mrs. Rogers to work for him, and that he would pay her no salary, but, " 'If she will stay and do my work and look after me and tend to me when I am sick and stay right here until I kick off,' that was his word, 'kick off,' 'She can have everything there is here. I have nobody else to leave it to,' he says." He further testified that at a subsequent time he had another conversation with the deceased Casady, as follows: "Well, I asked him how he made it with Mrs. Rogers, and he says, 'I put that proposition up to her just like I told you, the same thing, and she accepted it,' and she says, 'I think we will get along fine,' and she went out on that contract." He further testified that on a subsequent date, in the presence of his wife, the decedent, Mr. Casady, and the plaintiff, a further conversation took place, as follows: "I says to him, I says, 'Did she go out with the same understanding you talked to me about at my office?' He says, 'Yes, sir.' Well, I says, 'Don't you

think you ought to have a written statement of that fact so it would be better for both of you?' And he said, 'No,' he says, 'You are a witness to this,' and he says, 'I will leave it to you, if you are good enough to leave it to me.' I says, 'It is all right.' Well, I says, 'It is perfectly satisfactory to me then. I don't want no trouble about it on my part, she could go out;' and turned around and asked her if that was what Fred told her, * * * and she said, 'Yes,' that is what he told her."

The plaintiff called sundry witnesses who testified of alleged statements made by the deceased Casady at a later time as to what he intended to do with his property, and to the effect that he intended to give his property to Alpha Rogers, the plaintiff, but not that he was indebted to the plaintiff in any way. No further testimony was offered relative to any contract existing between the plaintiff and the decedent Fred W. Casady. It is also to be noted that two of the witnesses who gave this class of testimony are a sister and a brother-in-law, respectively, of the plaintiff.

To meet this testimony, the defendants offered the testimony of a Mr. J. W. Easton, for the purpose of impeaching the testimony of Mr. Wollman, the brother-in-law and witness for the plaintiff. Mr. Easton gave his occupation as superintendent of the Iowa-Nebraska Light & Power Company, and testified, in substance and effect, that he was present in the bank at Havelock, Nebraska, at a time when the safety deposit box of the deceased Fred W. Casady was opened; that he had a conversation with Mr. Wollman, which was as follows: "I asked him if he thought there was a will made out and some place by Mr. Fred Casady, and he said that he didn't know of any will. In fact, he said 'I have never heard Mr. Casady say anything about the farm or what is to become of it or anything of that nature. I never have heard a conversation in which Mr. Casady made a statement as to what he wanted done with the farm.'"

The defendants also offered the testimony of two additional disinterested witnesses, to the effect that the plain-

tiff made statements that all she expected was wages, and that she expected to leave the farm and seek employment elsewhere upon the death of Fred W. Casady. The defendants also offered in evidence a statement in the handwriting of Alpha Rogers, the plaintiff, on a calendar, which reads, "Fred gave me check." The defendants further offered in evidence the written notice to tenants of Fred W. Casady, signed by the plaintiff, in which she recognizes them as tenants of Fred W. Casady, which the defendants claim discredits the plaintiff's contention that she was the owner and had the possession of the farm in 1932; and they further offered the testimony of several witnesses which clearly shows she had nothing to do with the farm and did not have possession of it until the death of Fred W. Casady, when she took possession of the same. This testimony tends to show that all leases for the years 1935 and 1936 were made by the tenants with Fred W. Casady.

The defendants further offered in evidence proof of the filing of a claim by the plaintiff in the county court covering all of the time that she was at the Casady place, and for all the services that she rendered Fred W. Casady between 1932 and 1936.

At the time that the first conversation took place between the plaintiff's witness Wollman and the deceased with reference to the employment of the plaintiff by the deceased, the plaintiff herself was not present, and there is no showing made that Mr. Wollman was an agent for the plaintiff. The same is true as to the second conversation. The only time when the plaintiff was present at any conversation between Wollman and the decedent Casady was at the third conversation, which took place at Mr. Wollman's home in the fall of 1932. This conversation, the vital part of which has heretofore been quoted, is not sufficiently broad, we think, to establish the plaintiff's case, in that it fails to state an oral agreement which is clear, satisfactory and convincing, nor is the evidence submitted in this case sufficient to establish an oral agreement clearly and by a preponderance of the evidence. *McEntarffer v. Payne*, 107

Neb. 169, 185 N. W. 329; *Johnson v. Kern,* 117 Neb. 536, 225 N. W. 38; *Young v. Gillen,* 108 Neb. 311, 187 N. W. 900; *Rine v. Rine,* 100 Neb. 225, 158 N. W. 941; *Overlander v. Ware,* 102 Neb. 216, 166 N. W. 611; *Weber v. Crabill,* 123 Neb. 88, 242 N. W. 267; *Johnson v. Riseberg,* 90 Neb. 217, 133 N. W. 183; *Remaly v. Sweet,* 106 Neb. 327, 183 N. W. 663; *Hajek v. Hajek,* 108 Neb. 503, 188 N. W. 181; *Smith v. Raubach,* 121 Neb. 703, 238 N. W. 314; *Moore v. Moore,* 58 Neb. 268, 78 N. W. 495.

In considering the testimony of the defendants' witnesses offered in opposition to the plaintiff's testimony by way of impeaching statements, and in considering the weight of this testimony, we must necessarily consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite. *McEntarffer v. Payne,* 107 Neb. 169, 185 N. W. 329.

In the consideration of the plaintiff's evidence, it should be borne in mind that the plaintiff's three principal witnesses were brothers-in-law and a sister, respectively. While this relationship does not affect their competency as witnesses, it may affect their credibility, and undoubtedly this fact was borne in mind by the learned trial judge who heard this case. *Rine v. Rine,* 100 Neb. 225, 158 N. W. 941.

We are not unmindful of the fact that plaintiff and appellant has cited many cases in her brief in support of the proposition that an oral agreement to convey real estate will be specifically enforced where the evidence of such agreement is clear and satisfactory and the plaintiff has fully performed on his part, and its nonfulfilment on the one hand would amount to a fraud on the party who has fully performed it. *Weber v. Crabill,* 123 Neb. 88, 242 N. W. 267; *Moline v. Carlson,* 92 Neb. 419, 138 N. W. 721.

A careful reading of the cases above cited by the appellant in her brief will reveal that in all of the cases so cited the evidence offered in support of the alleged oral contracts to give or devise lands in return for personal services was clear, convincing and satisfactory, and that the courts

in these cases so found. However, we are agreed that the evidence in this case falls short of being clear, convincing and satisfactory, and that the plaintiff fails to maintain her burden of proof by a clear preponderance of the evidence. Therefore, considering the case as a trial *de novo*, and giving due attention to all direct evidence, facts and circumstances appearing in the record, we are impressed that the plaintiff has failed to prove her case by a clear preponderance of the evidence, and has failed to establish the oral agreement by evidence that is clear, satisfactory and convincing. *McEntarffer v. Payne*, 107 Neb. 169, 185 N. W. 329; *Goodlett v. Banning*, 127 Neb. 325, 255 N. W. 9; *Petersen v. Hitchcock*, 128 Neb. 381, 258 N. W. 669; *Remaly v. Sweet*, 106 Neb. 327, 183 N. W. 663; *Smith v. Raubach*, 121 Neb. 703, 238 N. W. 314; *Ward v. Hislop*, 122 Neb. 15, 238 N. W. 769; *Powers v. Norton*, 103 Neb. 761, 174 N. W. 223.

It therefore follows that this court is in accord with the judgment of the district court denying the plaintiff relief and directing the dismissal of her cause of action, which judgment is therefore hereby

AFFIRMED.