IRIL C. LAMB ET AL., APPELLEES, v. ARCHIE W. SANDALL ET AL., APPELLANTS.

281 N. W. 37

FILED JULY 15, 1938. No. 30363.

G. A. *Forman, Jr.,* for appellants.

*S. C. Ely, William M. Ely, Franklin L. Pierce* and *Philip M. Wellman, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, DAY, PAINE and MESSMORE, JJ., and RYAN, District Judge.

EBERLY, J.

This is an action in equity to establish and enforce a constructive trust against defendant Archie W. Sandall, as trustee of a trust *ex maleficio* for the benefit of plaintiffs. It is based upon an alleged violation by Sandall of an alleged oral contract of agency made by and between the plaintiffs and the defendant Sandall. The other defendants derived their rights involved in the litigation by and through the defendant Sandall. The defendants Archie W. Sandall and wife, Ruth E., each filed a general demurrer to plaintiffs' petition. The general demurrers were overruled. Thereupon these defendants answered, and to their several answers plaintiffs replied.

In the district court the plaintiffs prevailed, a decree was entered in effect adjudging them to be the equitable owners of the premises in suit, and awarding further relief as prayed in their petition. From the order of the district court overruling their motions for new trial, defendants appeal.

The record discloses that the plaintiffs and defendants were neighoring ranchers. Between their respective ranches were situated about a thousand acres of land known as the Crogan ranch. It lies about half way between the ranches of plaintiffs and defendants, and adjoins both ranches. A portion of the Crogan ranch had been rented, occupied, and used by the Lambs and by the Sandalls for ten or twelve years continuously, and these parties were each desirous of purchasing at least a part thereof. This fact was mutually known to each of them.

The contention of plaintiffs as to the controversy in suit which arose with reference to this land may be summarized as follows: Plaintiffs' petition alleges that Archie W. Sandall "proposed to the plaintiffs that if they would

agree to a division of said land (referring to the entire
1,000-acre tract which was then in possession of plaintiffs)
between the plaintiffs and said defendant, and said plaintiffs
would buy said west half of section six (6) and said north-
east quarter of section seven (7) (being the 500 acres adjoin-
ing the plaintiffs' land), and would permit said defendant
to buy said west half of the west half of section seven (7),
and said east half of section twelve (12) (being the 500 acres
adjoining the Sandall ranch), and that if said plaintiffs
would agree not to make an offer for the purchase of said
1,000-acre tract of land in excess of $2,500, he, said Archie
W. Sandall, would negotiate with the owner for the pur-
chase of said tract at a total price of $2,500, and that he
would purchase the said west half of section six (6) and
said northeast quarter of section seven (7) for and on be-
half of the plaintiffs, and the remainder of said tract for
and on behalf of himself, the plaintiffs to pay one-half of
said total price of $2,500, and one-half of any expenses in-
curred in making said purchase, said payment to be made
at the time of the passing of the title from the owner to
said plaintiffs for that part of said land which they were
to buy, * * * and said defendant further proposed that he be
permitted to take immediate possession of that part of said
land which he would buy for himself and that the plaintiffs
retain possession of that part that he was to purchase for
them."

It is further alleged in this petition that these plaintiffs,
believing that Sandall "would faithfully fulfil and perform
his promise and agreement to purchase said land for and
on behalf of the plaintiffs," accepted said offer and proposal
of defendant, and agreed to all the terms and conditions
thereof; that, after the making of this contract and agree-
ment, the defendant purchased the Crogan ranch, paid for
it himself, caused the title thereof to be vested in himself
and his wife, Ruth E. Sandall, and repudiated and wholly
failed to perform the contract of agency hereinbefore set
out.

It is insisted that the evidence is insufficient to sustain

a contract of agency between the plaintiffs and Sandall. To set out the evidence on this point would unduly extend this opinion, and after setting it out the most that could be urged by defendants would be that it is conflicting. All the witnesses were personally before the trial court, and that gave to that court advantages in weighing their testimony which we do not possess, and even without allowing for that advantage we should hesitate, in view of the entire record, to hold that the evidence is not sufficient to sustain the findings and decree of the district court.

It would seem that the rule reiterated in *Rogers v. Casady,* 134 Neb. 227, 278 N. W. 267, would, under the circumstances of this record, be applicable, viz.:

"Upon appeal of an action in equity, when the testimony of witnesses orally examined before the court on the vital issues is conflicting, this court will, while trying the case *de novo,* consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite."

It would appear, therefore, that the contention of the appellees as to the facts involved is amply supported by the proof.

On this factual basis, the contention of appellants that the oral contract in suit is void under our statute of frauds still remains for our consideration. In *Stephenson v. Golden,* 279 Mich. 710, 734, 276 N. W. 849, 857, the following definitions of agency are quoted with approval, viz.:

" 'An agent is a person having an express or implied authority to represent or act on behalf of another person, who is called his principal.' Bowstead on Agency (4th ed.) p. 1.

" 'An agent is one who acts for or in the place of another by authority from him; one who undertakes to transact some business or manage some affairs for another by authority and on account of the latter, and to render an account of it. He is a substitute, a deputy, appointed by the principal, with power to do the things which the principal may or can do.' 2 C. J. S. p. 1025."

See, also, 1 Mechem, Agency (2d ed.) p. 21.

It appearing that Sandall, by an oral contract, was employed as agent for the purpose of negotiating and purchasing the three north quarter-sections of the Crogan ranch, under the terms heretofore set forth, for the plaintiffs, appellants contend that this contract is void under our statute of frauds. They cite sections 36-103 and 36-105, Comp. St. 1929, to sustain their contention, and also certain adjudications from other states as sustaining their position.

An able review of the authorities on this question may be found in *Harrop v. Cole,* 85 N. J. Eq. 32, 95 Atl. 378 (affirmed in 86 N. J. Eq. 250, 98 Atl. 1085), in which it was held that an agent verbally employed to negotiate the purchase of land, who, in violation of such duty, purchased it with his own money, and took the deed thereof to himself, was a constructive trustee. The New Jersey court, in its opinion, says in part, viz.:

"With the view of the evidence which I entertain, the case resolves itself into a well-defined question of law about which there has been a remarkable diversity of opinion expressed in decisions of the courts and in the text-books.

"Mr. Perry seems to accept as established law that 'parol proof cannot be received to establish a resulting trust in lands purchased by an agent, and paid for by his own funds, no money of the principal being used for the payment.' 1 Perry, Trusts, sec. 135.

"Mr. Browne, in his authoritative work on the statute of frauds, appears to favor the contrary view. Browne, Fraud, sec. 96.

"In volume 15 of the Am. & Eng. Encycl. L. (2d ed.) (at p. 1187), cases on both sides of this question are cited, and it is stated that 'it seems to be held by the weight of authority that a court of equity cannot grant relief' by holding the agent 'a constructive trustee.'

"We have the supreme court of the United States and the English courts, and the courts of several of the states, firmly supporting the rule that the derelict agent can be

decreed in equity to hold in trust for his betrayed and defrauded principal. Other courts of various states of high authority have held otherwise.

"It is important to note that the whole basis of objection to the granting of relief to the deceived principal rests upon the statute of frauds. The argument, as stated by Mr. Perry, is that 'the relation of principal and agent depends upon the agreement existing between them, and the trust in such a case must arise from the agreement and not from the transaction, and where a trust arises from an agreement, it is within the statute of frauds and must be in writing.'

"I think that this view is entirely erroneous and the trend of the decisions is toward its rejection. A trust which is more correctly classifiable as a constructive trust (1 Pom. Eq. sec. 155; 1 Perry, Trusts, sec. 166) than as a resulting trust (1 Perry, Trusts, sec. 135) is established by proof of the betrayal of confidence, of the violation of duties arising out of a fiduciary relation. The fiduciary relation may be established in a large number of ways. It is a mere accident that in this particular case, and in large numbers of others, the fiduciary relation grows out of a verbal promise. As the authorities abundantly show, equity will not tolerate the betrayal of confidence and it makes no difference how this confidence has been obtained.

"When one man assumes to act as agent for another, as the representative of another, he necessarily establishes a fiduciary relation between himself and the other person who stands as his principal. This is in the very nature of the transaction because the agent undertakes to act not for his own benefit but for the benefit of his principal, and his principal stays out of his own business and confides in the agent to attend to this business for him. It is the assumption by the agent of his representative status and the confidence necessarily reposed in him by the principal which create the agent's peculiar liabilities and cast special limitations and obligations upon him. The agency may be established by a written contract or a verbal contract, or

no contract whatever, the assumption and confidence involving a purely gratuitous service for which the agent is to receive no compensation in any form."

Appellants contend that, in the instant case, the oral contract providing for the purchase of the land being silent as to whether the land purchased for the Lambs should be deeded to them direct or that it should be deeded first to Sandall and by him to the Lambs, for this reason such contract is void under the statute of frauds. Notwithstanding this situation, in legal effect the oral contract required the title to be conveyed direct to the Lambs. The controlling principle is, viz.:

"Unless otherwise agreed, an agent receiving or holding things on behalf of the principal is subject to a duty to the principal not to receive or deal with them so that they will appear to be his own, and not so to mingle them with his own things as to destroy their identity." Restatement, Agency, sec. 398.

In the absence of a contrary agreement, the accepted principles of the law of agency would require that Sandall should not take title to the premises in his own name, but that the premises should be conveyed to the principal direct.

In this jurisdiction we stand with the states which are in harmony with the New Jersey courts, and we have announced the following as controlling in this state, viz.:

"Where one employed to act as the agent for another in the purchase of real estate becomes the purchaser himself, he will be considered in equity as holding the property in trust for his principal, although he purchased with his own money, subject to reimbursement for his proper expenditures in that behalf." *Johnson v. Hayward,* 74 Neb. 157, 103 N. W. 1058.

See, also, *Dickson v. Stewart,* 71 Neb. 424, 98 N. W. 1085; *Rice v. Dougherty,* 148 Ill. App. 368; *Pope v. Dapray,* 176 Ill. 478, 52 N. E. 58; *Carr v. Craig,* 138 Ia. 526, 116 N. W. 720; *Matney v. Yates,* 121 Va. 506, 93 S. E. 694; *Schmidt v. Beiseker,* 14 N. Dak. 587, 105 N. W. 1102; *Brookings Land & Trust Co. v. Bertness,* 17 S. Dak. 293, 96 N. W. 97; *Morris*

*v. Reigel,* 19 S. Dak. 26, 101 N. W. 1086; *Rose v. Hayden,* 35 Kan. 106, 10 Pac. 554; *Sanford v. Hamner,* 115 Ala. 406, 22 So. 117; *Quinn v. Phipps,* 93 Fla. 805, 113 So. 419, 54 A. L. R. 1173; *Stephenson v. Golden,* 279 Mich. 710, 276 N. W. 849.

In view of the controlling principles herein discussed, the defendants, Sandall and his wife, under the facts disclosed by the evidence, are to be properly considered, in equity, as holding the three north quarter-sections of land in trust for the Lambs, as determined by the decree of the trial court.

It follows that the judgment of the district court is in all respects correct, and it is

AFFIRMED.