HENRY DAMKROEGER ET AL., APPELLANTS, V. J. W. JAMES, ADMINISTRATOR, ET AL., APPELLEES.

FILED APRIL 3, 1914.     No. 17,722.

1. **Specific Performance:** PAROL CONTRACT: PART PERFORMANCE. "Specific performance of a parol contract will be enforced by a court of equity, where one party has wholly and the other partly performed it, and its nonfulfilment on the one hand would amount to a fraud on the party who has fully performed it." *Kofka v. Rosicky*, 41 Neb. 328.

2. ——: ——: EVIDENCE. The evidence in this case, indicated in the opinion, is *held* to be sufficient to establish such a contract.

APPEAL from the district court for Adams county: HARRY S. DUNGAN, JUDGE. *Reversed with directions.*

*J. A. Gardiner, Steiner & Boslaugh* and *John C. Stevens,* for appellants.

*John M. Ragan, Karl D. Beghtol* and *J. E. Addie, contra.*

SEDGWICK, J.

August Damkroeger died intestate in Adams county, and left some property, real and personal. Afterwards the plaintiffs, who are husband and wife, brought this action in the district court for that county to obtain a specific performance of an alleged contract of the said decedent to convey the said property to these plaintiffs. They alleged that the deceased, who had no family of his own, had lived with them as a member of their family for about 12 years, and that some 15 or 20 years ago, while he was so living with them, the deceased promised and agreed that, if they would allow him to so continue to live with them, and would board and care for him, they should have his property at his decease. He died suddenly after two or three days illness, at the age of 72 years, and without having made any will or conveyance in their favor. They fully performed the contract on their part, and had received no compensation therefor. The defendant James is administrator of the estate of the deceased, and the other defendants are heirs and next of kin. The defendants admitted the formal parts of the petition, and denied the material allegations. The trial court found the issues in favor of the defendants, and entered a decree accordingly, and the plaintiffs have appealed.

That "specific performance of a parol contract will be enforced by a court of equity, where one party has wholly and the other partly performed it, and its nonfulfilment on the one hand would amount to a fraud on the party who has fully performed it," has been well established as the law of this state. *Kofka v. Rosicky*, 41 Neb. 328; *Hespin v. Wendeln*, 85 Neb. 172; *O'Connor v. Waters*, 88 Neb. 224; *Peterson v. Baur*, 83 Neb. 405.

Henry Damkroeger and his wife and family came to this country from Germany in 1882, and his brother August came with them. They located in Jefferson county, and August resided with the family there for about six years. Afterwards he had a farm of his own, and the witnesses testified that he spent some of the time in his own house "batching it," but had no other home than with the family

95 Neb. 50

of the plaintiffs. During the last six years of his life he lived wholly with the plaintiffs' family. He had a room by himself, and, being in poor health, required and received special care. So far as this evidence shows, he never paid the plaintiffs anything for his board and the care which they took of him. Charlotta Damkroeger testified to conversations that she heard between her husband and August while they were residing in Jefferson county, in which her husband suggested to August that there should be some arrangements made in regard to his living with them, and August, who was a very careful man financially, replied that they (these plaintiffs) should have all of his property when he died, and that that would be ample pay for taking care of him. Her evidence was objected to, but was admitted subject to the subsequent conclusion of the court, and the defendants in their brief say that the evidence of Charlotta Damkroeger was stricken out by the court as incompetent because it appears that she participated in the conversation with the decedent to which she testifies. The brief does not refer to the part of the record which shows that ruling. After the evidence was closed, the record recites that the motion to strike out this evidence was renewed, and that there was "no ruling at this time." This witness was not familiar with the English language. She testified through an interpreter. On cross-examination she was asked, and answered: "Q. Now, in these conversations August was talking to you and your husband both, and you were both talking to him? A. Yes. Q. You took as much part in the conversation as Henry, did you not? A. No. Q. August talked to both of you, did he not? A. He talked to Henry." From the whole evidence of this witness it is clear that she meant to testify that she overheard the conversations between her husband and his brother, and took no part therein herself. Several witnesses testified to different conversations with August during the many years that he was living with these plaintiffs, in which August more or less definitely stated that these plaintiffs were to have his property at his death. Henry Roeder, who was a

carpenter and painter in Hastings, testified that he had known August Damkroeger for about a year prior to his death; that he saw him quite often; that August was in the habit of coming down to the witness' house and to his shop to visit with him in the German language; and, referring to a conversation about a month before August's death, the witness testified: "He told me about his property, of the different wealth he had, and, of course, I knew he was not a married man and had not been married. I knew he was getting old and might not live long. I asked him who would fall heir to his wealth. He said that Henry Damkroeger would, because he had kept him the biggest part of his life and he had treated him right; had cared for him nicely and had treated him the best he knew how." This witness appears to be competent and disinterested. Mr. Charles W. Juhl testified that he knew August Damkroeger for about two years before his death, and that just before his death August was at the witness' house, and, in the course of their conversation, "said he wanted to look around and see what we had. We went out with him and showed him what we had—our cows, hogs, chickens and things—and he said we were getting along good, and if we kept on we would be rich. We were out by the barn looking northeast, and he said he was getting old and did not think he would last long, and when he died that Henry would get all of his property." Mr. Juhl's wife was present and heard this conversation, and she testified to substantially the same thing.

If the former decisions of this court above cited are to be followed, this evidence is sufficient to establish the case of the plaintiffs. It is said in the brief that equity will not compel a specific performance of an oral contract to convey real estate, "if the services rendered have a money value." The brief continues: "The circumstances under which services can be considered part performance to remove such a case from the action of the statute of frauds are very special and extraordinary, such as the love of a child or daughter, or great service rendered in a long sickness, where utter mental and physical incapacity

exists, or where constant and unwearied attention attest the devotion of a life or for years." Many courts have adhered to such a rule in all its strictness. It has been urged by counsel in several of the cases heretofore determined by this court: *Peterson v. Estate of Bauer*, 83 Neb. 405; *Harrison v. Harrison*, 80 Neb. 103; and other cases. It has not been followed as the defendants in this case would construe and apply it. Each case must depend upon its own circumstances and conditions. The proof must be clear and unequivocal. When it is clearly established that the alleged contract was not an unreasonable one under the circumstances, and has been fully and faithfully performed on the one part relying upon its performance by the other party, and there is no such disproportion of values shown as would render the alleged contract unconscionable and improbable, this court has uniformly held that such contract will be specifically enforced. This seems to us to be the only way that equal justice can be done. There is nothing in this evidence to indicate that these plaintiffs would have been willing to do as they did relying upon an implied agreement to pay them, at some time then in the indefinite future, such amount of money as a court or jury might estimate as equivalent. If the agreement was fair and reasonable, and they have done their part, they are entitled to the agreed compensation. Such contracts, when fully performed on one part, are enforced between the living. And, if the proof can be made clear and satisfactory, there is no greater reason for refusing relief in cases such as this.

The decree of the district court is reversed and the cause remanded, with directions to enter a decree in favor of plaintiffs as prayed in their petition.

REVERSED.

LETTON, FAWCETT and HAMER, JJ., not sitting.