HENRY GEISE, APPELLEE, V. ARTHUR T. YARTER ET AL., CROSS-APPELLANTS: BILLS & CLINE ET AL., APPELLANTS.

FILED APRIL 10, 1924. No. 22728.

1. **Witnesses:** EVIDENCE: COMPETENCY. In an action against the representative of a deceased person and the surviving partner of the firm, the evidence of a witness, having a direct legal interest in the result, as to transactions and conversations with deceased, is competent unless the interest of the representative in that action is adverse to the interest of the witness.

2. **Contracts:** RESCISSION: NOTICE OF ELECTION. An action in equity to rescind a contract for the alleged fraud of defendants may be maintained without the prior service of notice of an election to rescind.

3. **Evidence examined, and findings of the district court approved and adopted.**

4. **Contracts:** RESCISSION: POWER OF COURT. In an action in equity to rescind a contract for the purchase of stock of a corporation, the consideration for which was a note of a third party secured by mortgage, and which had been sold by the fraudulent vendor to a purchaser with knowledge of the fraud, and, in turn, sold by said purchaser to an innocent party, *held*, that, upon decreeing rescission, the court had jurisdiction to render a money judgment in favor of plaintiff and against all defendants guilty of the fraud whereby plaintiff had been deprived of his property.

5. ———: ———: BURDEN OF PROOF. In such case, evidence tending to prove the fraud having been received, the burden was upon the purchaser from the fraudulent vendor to prove that he purchased in good faith and without notice.

APPEAL from the district court for Lincoln county: BAYARD H. PAINE, JUDGE. *Affirmed in part, and reversed in part.*

*C. C. Flansburg,* for appellants.

*Doyle & Halligan,* for cross-appellants.

*Halligan, Beatty & Halligan, contra.*

Heard before MORRISSEY, C. J., DAY, ROSE and GOOD, JJ., and REDICK, District Judge.

REDICK, District Judge.

This is an action brought by Henry Geise, plaintiff, against Arthur T. Yarter, Perry Anthony, Sarvis Lumber Company, a corporation, and Bills and Cline, a copartnership. Charles J. Bills, one of the partners, died pending suit, and by stipulation of the parties the action was revived as to Charles J. Bills against Florence L. Bills, executrix of his estate. The action is in equity for the rescission of a contract between plaintiff and Perry Anthony, whereby Anthony sold to the plaintiff 75 shares of stock in the Sarvis Lumber Company at $200 a share, upon the ground that the plaintiff had been induced to make the purchase by false representations. The allegations of the petition are sub-

stantially as follows: That on or about the 9th day of April, 1920, the defendants Yarter and Anthony were the agents of the lumber company for the sale of its stock, and represented to the plaintiff that the par value of the stock was $200 a share, that its actual market value was $200 a share, that the corporation had paid large dividends upon its common stock and would do so in the future; that Yarter held $3,000 of the stock and had recently been paid 18 per cent. dividends; that one Dieringer owned a similar amount and had been paid 18 per cent. dividends, and was going to sell his farm and buy more of the stock; that the company was financially sound. It was further alleged that Yarter, who was the more active in making these representations, was an old friend and neighbor of the plaintiff; that he believed and relied upon said statements and purchased 75 shares for $15,000, by assigning to Anthony a mortgage of the value of $20,298, principal and interest, receiving the surplus over the $15,000 from Yarter and Anthony; that the stock was delivered to plaintiff April 22, 1920, and then for the first time he discovered that the shares were of the par value of only $100, and he commenced an investigation resulting in the discovery that all of the representations above set forth were false, and immediately rescinded the sale and tendered the stock to the defendants, demanding his mortgage in return, which was refused. It was further alleged that the defendants Bills and Cline had purchased, or were about to purchase, the said mortgage from Anthony, and that said Bills and Cline had full knowledge of the fraud practiced on the plaintiff and are not holders for value in the usual course of business; that unless restrained they will sell said note and mortgage to innocent parties; and that the defendants are insolvent. The prayer is for a rescission of the contract, for an injunction restraining the negotiation of the note and mortgage, and, in case it had been negotiated, for a judgment against the defendants for $15,000 and interest. The action was begun May 7, 1920, and a restraining order was issued and served.

Bills and Cline answered that they purchased the note and mortgage in question April 20, 1920, in the usual course of business, for full consideration, without notice of any defects or defenses and acting in good faith, the said Charles J. Bills, since deceased, conducting the negotiations; that prior to the service of the restraining order they had sold the same to an eastern client and had paid all of the purchase price of said note and mortgage to defendant Anthony for his use and benefit or under his direction, except the sum of $5,293.49 which was still in defendant's hands, and which it offered to pay into court for the benefit of the party entitled thereto. It was further alleged that all the capital assets, including the note and mortgage in question, of Bills and Cline were the individual property of Charles J. Bills.

The answer of Perry Anthony admitted the sale of the stock, but alleged it was his own property and that he was not acting as agent of the lumber company, denies the making of the alleged representations, alleges that Bills and Cline were fully informed at the time of the purchase of the manner in which defendant became the owner of the note and mortgage, and that he had only received the sum of $3,500 for the same, and prayed judgment against Bills and Cline for $18,248.

The lumber company answered denying all the allegations of the petition, and alleged that the stock in question was the property of Anthony and that defendant had no interest in it. Yarter answered and denied making the representations alleged, and that upon the occasion of the sale of said stock he did not represent Anthony in any other capacity than as a chauffeur. He further alleged that at the request of Anthony he furnished the sum of $3,300 to make up the difference between the purchase price of the stock and the note and mortgage, which had never been repaid, and prayed judgment against plaintiff for that amount in case the contract was rescinded. Florence L. Bills, executrix, answered, admitting the copartnership of Bills and Cline, alleging that all the funds of the partner-

ship were the personal property of Bills, Cline's interest being only in the profits; that the money in the hands of Bills and Cline belonged to her as executrix, admitted the purchase by Bills and Cline, which she alleged was made in good faith and for full value in the due course of business, and denied all other allegations in the petition for want of knowledge or information.

The trial resulted in a decree finding generally for the plaintiff and against all defendants, rendering judgment against them in the sum of $16,685, upon which the sum of $5,232.70 was to be credited when paid into court as ordered. The decree specifically found that Bills and Cline purchased the note and mortgage with knowledge of the fraud, not in the regular course of business, and that they were not innocent purchasers. The court declined to determine the rights of the defendants as between themselves and the judgment was without prejudice thereto. Bills and Cline, a copartnership and Florence L. Bills, executrix, appeal, and Yarter, Anthony and the lumber company file cross-appeals.

The first assignment of error by appellees is that the judgment against the executrix has no foundation in the pleadings, the point being that after she had been substituted for Charles J. Bills, deceased, and the action revived in her name, no amended or supplemental petition was filed charging her as executrix; but it was held in *Missouri P. R. Co. v. Fox*, 56 Neb. 746, that such pleadings, though proper, were unnecessary, as the facts already appeared upon the record. Furthermore, she filed an answer to the plaintiff's petition, thereby treating it as tendering an issue to her, and she cannot now complain of a failure to make a formal amendment. The second assignment is that no cause of action is stated against Bills and Cline except as to the amount tendered into court, but this assignment is not argued, and is not well taken at all events for the reason that, if Bills and Cline were not purchasers in good faith, they could not escape liability by transferring the

note and mortgage to an innocent holder, but are liable for its value. 13 C. J. 611; sec. 653; 35 Cyc. 158.

It is further contended that an order barring claims in the estate of Charles J. Bills applies to the claim in question, as the same was not presented to the county court, but there is no merit in this proposition because the statute barring claims expressly provides that it shall not "be construed to affect actions pending against the deceased at the time of his death." Comp. St. 1922, sec. 1344. And section 1375 provides for the certification of the judgment in such actions to the county court for allowance.

We do not think that it is or can be seriously contended that the plaintiff was not defrauded of his mortgage by reliance upon misrepresentations of fact as set out in the petition. The evidence of plaintiff is clear and convincing that the representations were made by defendant Yarter. It is shown that Anthony and Yarter drove in an automobile to plaintiff's residence, and that Anthony took Yarter along because he was a good friend and neighbor of plaintiff, and sent him into the house, Anthony remaining outside in the automobile; and the principal representations were made by Yarter while in the house, and Anthony is bound thereby. Yarter was not called as a witness, so the testimony of plaintiff and his wife as to the statements of Yarter are practically undisputed, and the finding of the district court upon this subject is amply sustained and will not be disturbed.

The contention most seriously urged by the appellants involves the sufficiency of the evidence to establish bad faith upon the part of Bills and Cline, and it will be necessary to consider somewhat in detail the evidence upon this question. The name of the corporation was originally Sarvis Timber Company, and was later changed to Sarvis Lumber Company, and will be herein referred to as the lumber company. It appears that the original capital stock of the Sarvis Lumber Company was $200,000, which was issued in varying amounts to Charles J. Bills and Willard Kimball, without consideration. The capital stock of the

company was then increased and provision made for the issuance of $500,000 of preferred stock, $243,000 of which was sold by Perry Anthony and his brother, acting as agents of the lumber company, at par or above, and for their services they received $50,000 of the common stock; the defendant Perry Anthony afterwards becoming the sole owner thereof. Anthony subsequently secured $10,000 more of the common stock as commission from Kimball for selling $20,000 worth at par, and the 75 shares sold to the plaintiff were a part of Anthony's personal stock, which he sold on his own account, and not as agent of the lumber company. The company issued bonds in the sum of $125,000 and placed them in the hands of Bills for sale, and they were sold, and Bills received as commission $20,000 cash and a bonus of $125,000 of common stock (a part of the $200,000 above mentioned). Bills then sold his stock to Kimball at par for $162,500, for which he gave his note, and under a contract whereby Kimball agreed to apply in payment of said sum all the income of the lumber company from the sale of lumber and lath until said amount was fully paid. By this transaction the usual process was reversed; instead of the company receiving pay for its stock, it issued the same without consideration and then paid for it out of its own assets. Bills, Cline, McCormick (an employee of Bills) and Kimball were officers and directors and in control of the company, Kimball being president, and the contract above referred to providing that such control should continue until $112,500 had been paid upon said note, in the meantime Bills retaining the stock as security, with the right to vote the same, $85,000 of the proceeds of the sale of the preferred stock was applied toward the payment of Kimball's indebtedness to Bills, and a total of about $125,000 has been paid thereon. The facts just stated are sufficient to charge Bills with full knowledge of the position and value of the common stock of the lumber company.

At the time of the purchase by Bills and Cline from An-

thony of the mortgage in question, there was due thereon for principal and interest the sum of $20,398.87. Anthony was paid thereon the sum of $2,000 at the time, and later on, after an investigation of the security, $1,500, or a total of $3,500. $5,232.70 remains in the hands of Bills and Cline to the credit of Anthony, and $9,544.59 was retained by Bills and Cline for the purpose of taking up $5,572.50 of past-due coupons on the lumber company's bonds, $1,137.09 accrued interest thereon, and $2,835, the amount of coupons coming due June 15, 1920. Payment of these coupons had been guaranteed by Bills and Cline through an agreement to repurchase them if not paid when due, and they were in their hands for collection. They also charged Anthony a discount on the purchase of the mortgage of $2,000. It will thus be noted that the entire consideration actually paid by Bills and Cline to Anthony for his $20,000 mortgage was the $3,500 cash and $5,232.70 credit, or a total of $8,732.70, the balance being made up of the discount $2,000, amount retained for coupons $9,544, and some small items for expenses for abstract and investigation of the property. While at this time Anthony was a director of the lumber company, he had only a comparatively small interest therein, and was in no way personally liable for the payment of the coupons above referred to. He submitted to a discount from the actual value of his mortgage of $2,000 and a further sum of over $9,500 for the purpose of paying or reimbursing Bills and Cline for the payment of those coupons, and beyond this had paid $2,828.21 from his own funds, and become liable to Yarter for $2,469.79 (the excess of the value of the mortgage over the purchase price of the stock). The defendants offer no satisfactory explanation of this transaction, their only suggestion being that the discount and application of the proceeds to the payment of the coupons were the only considerations under which they would purchase the mortgage. The evidence is to the effect that the security of the mortgage was ample for the payment of the

debt, and no good reason is shown or suggested why Anthony should submit to the terms imposed, other than that Bills and Cline had full knowledge of all the circumstances surrounding the purchase of the mortgage and were acting in concert with Anthony in the application of the proceeds thereof. As the result of the transaction, Bills and Cline obtained a mortgage of the value of over $20,000 for about $8,700. The facts above stated would seem of themselves sufficient to make it very difficult of belief that the purchase of the mortgage by Bills and Cline was in due course, for value, in good faith, and without notice of the fraud by which Anthony had obtained title to it. In addition to this, however, Anthony, called as a witness for the plaintiff, testified that he told Bills and Cline that he had sold 75 shares of his stock at $200 a share and had taken the mortgage in payment therefor, that he had sold other mortgages taken for lumber company stock to Bills and Cline, and that he had never received the coupons referred to, although he had demanded them. The evidence of Anthony as to what he told Bills and Cline was contradicted by that of Cline and McCormick. Evidence having been received tending to prove that the note and mortgage had been procured by fraud, the burden was cast upon defendants Bills and Cline to prove that they were purchasers for value, in good faith, and without notice of any defect in the title of Anthony. *Auld v. Walker*, 107 Neb. 676, *Shawnee State Bank v. Vansyckle*, 109 Neb. 86. This they have failed to do.

It is strenuously contended by appellants that this evidence of Anthony of a conversation with Bills, since deceased, was incompetent under the statute as against his representatives, the executrix, and the surviving member of the firm, Cline. The statute referred to is section 8836, Comp. St. 1922, reading as follows:

"No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be per-

mitted to testify to any transaction or conversation had between the deceased person and the witness."

This section was construed by this court in *Hageman v. Powell,* 76 Neb. 514, where it was held, quoting from *Wylie v. Charlton,* 43 Neb. 840: "Having in view the common law as to competency, and the mischief which this statute sought to prevent, it should be construed as if it read that no person having a direct legal interest in the result of an action shall be permitted to testify, when the party interested adversely to the witness' interest is the representative of a deceased person." The question, then, is whether or not Anthony had any legal interest in the controversy between plaintiff and Bills adverse to Bills or his representative. As stated thus it seems perfectly clear that any interest which Anthony had was in the success of Bills, and not adverse to him, because, if the plaintiff in this action were defeated, Anthony would be entitled to receive at least the sum to his credit, to wit, $5,232, and perhaps the value of the coupons deducted from the proceeds of the mortgage. In an action by Anthony against the executrix and Cline to recover these amounts, it is probable Anthony's evidence would be incompetent, but that is a different question. The same observations dispose of the objection on account of Cline, the surviving partner, being a representative within the meaning of the statute. As a witness in the case of plaintiff *versus* the representatives of Bills and Cline, Anthony had no interest adverse to such representatives.

The further contention is made that the evidence of Anthony was incompetent as an attempt to vary the terms of the written contract entered into by Anthony and Bills and Cline at the time of the purchase of the mortgage, but there is no merit in this. The evidence had no such tendency as ascribed to it, but was offered and received only upon the question of knowledge and good faith of Bills and Cline in making the purchase.

It is objected that no notice of rescission was given before suit, but this was not necessary. When a party seeks

to rescind a contract by his own act, he must give the other party notice; but when he seeks the aid of a court for that purpose, the bringing of the action is sufficient disaffirmance for the purpose of the action. *Knappen v. Freeman,* 47 Minn. 491; *First Nat. Bank v. Blocker,* 150 Minn. 337.

Complaint is made that the decree is for damages which are recoverable in a law action; but the court of equity having obtained jurisdiction of the action for rescission, and having found for plaintiff, had the power to grant relief in the form of a money decree, it appearing that the note and mortgage had passed into the hands of an innocent party and could not be ordered delivered up as prayed. The petition contained a prayer for general relief.

The cross-appellants complain of the refusal of the court to dispose of their several contentions as between themselves, but we think the discretion of the court in this regard was properly exercised.

Upon a careful and thorough consideration of the entire record, we are convinced that the findings and judgment of the district court are correct, with this exception: There is no evidence to sustain a finding that in the sale of the stock in question Anthony was the agent of the Sarvis Lumber Company; on the contrary, it is beyond dispute that he was acting for himself alone. It follows that the judgment against the Sarvis Lumber Company must be reversed and the action dismissed; in all other respects it is affirmed.

AFFIRMED IN PART, AND REVERSED IN PART.

Note—See Witnesses, 40 Cyc. p. 2281—Cancelation of Instruments, 9 C. J. p. 1207, sec. 91; p. 1262, sec. 210; p. 1251, sec. 188; Corporations, 14 C. J. p. 713, sec. 1093.