JACOB WEBER ET AL., APPELLEES, V. G. M. CRABILL, ADMINISTRATOR, ET AL., APPELLANTS.

FILED APRIL 14, 1932. No. 28184.

*Max G. Towle, Farley Young* and *Wright & Wright*, for appellants.

*Morrow & Morrow*, contra.

Heard before GOSS, C. J., ROSE, DEAN, GOOD, DAY and PAINE, JJ., and LOVEL S. HASTINGS, District Judge.

DEAN, J.

Jacob Weber and Elizabeth, his wife, began this action in the district court for Scotts Bluff county to obtain a decree requiring the specific performance of an oral agreement which they allege was entered into between them and Ernest Zehner, since deceased, and to have the title in and to the following described real estate, namely, lots 4, 5, and 6, in section 13, township 21 north, range 54, west of the 6th principal meridian, in Scotts Bluff county, of the value of $2,500, quieted in them. The plaintiffs contend that Zehner agreed to convey the above described real estate to them in consideration of the plaintiffs' living with and caring for him during the remainder of his life.

Upon submission of the evidence the trial court entered a judgment in favor of the plaintiffs and confirmed and quieted the title to the above real estate in the plaintiffs. From the judgment so rendered, an adopted minor son of the decedent, the son's guardian, and the administrator of the estate of Ernest Zehner have appealed.

Ernest Zehner was born in Germany and, at the time of his death, was about 70 years of age. He left an estate of the value of $35,000 or more. From certain documents in the record it appears that Zehner was divorced from his first wife and that he was twice divorced from his second wife. No children were born of either marriage nor does it appear that Zehner left any relatives surviving him. The record, however, discloses that Zehner and his first wife adopted a baby boy, but that, in less than a year after his adoption, the baby was committed to the care of the board of commissioners of state institutions when Zehner and his first wife were divorced. And from the evidence it appears that Zehner did not know of the whereabouts of the adopted boy nor did the son, according to the son's evidence, have any knowledge that he had been adopted until after Zehner's death. And it may here be observed that Zehner lived alone most of the time after

his matrimonial difficulties came to an end and until Weber and his wife moved into his home with him.

The plaintiffs Weber were born in Germany and came to the United States in 1924 and, at the time of the trial, each was about 38 years of age. Shortly before the time in question here they occupied a one-room house on the Zehner property, but they later moved into Zehner's home and lived there with him until his death. It was stipulated that Weber delivered to Zehner one-third of the grain and one-fifth of the sugar beets, and one-half of the hay raised on the 38 acres of land during the years 1928, 1929, and 1930, and that no other crop was raised thereon during those years.

The plaintiffs were, of course, precluded from testifying in respect of representations made to them by the decedent Zehner in regard to the property in question. Comp. St. 1929, sec. 20-1202; *In re Estate of Schellenberg,* 122 Neb. 585. But the evidence of many witnesses who were neighbors of Zehner and who had known him for many years was introduced in behalf of the plaintiffs. The defendants offered no evidence. Several witnesses for the plaintiffs testified that they had known the decedent for upwards of 30 years. Their evidence is in effect that, before the plaintiffs lived with Zehner, his home was very dirty. But after the plaintiffs moved into his home Zehner told several of his neighbors that he was very fond of Mrs. Weber's cooking and that she kept his house in good order and kept his clothing clean and in good condition. And these witnesses testified that Zehner told them that it was his intention to repay the plaintiffs for their care and their kindness to him by conveying to them the "home place," that being the real estate in question here. He also stated that he had promised and agreed to give the home place to the Webers if they would continue to take care of him the rest of his life. To substantially the same effect is the evidence of other witnesses who had been acquainted with Zehner for many years and who came into contact with him often. And from the fact that Zehner left an estate valued at more than $35,000 and that the

property in question here is worth but $2,500, the agreement between the parties appears to be reasonable. The plaintiffs had accumulated no property of their own and the witnesses who testified in their behalf could have had no motive in misrepresenting statements made to them by Zehner. That Zehner appreciated what the plaintiffs had done for him clearly appears. In fact, two weeks before his death, he told one witness that he, Zehner, "must go and get that deed made out for Mr. Weber; he said he kept neglecting it and he was afraid that he would neglect it too long." The evidence clearly establishes the fact that it was his sudden death alone that prevented Zehner from executing the necessary papers to effect an actual conveyance of such real estate.

We have held that "Specific performance of a parol contract will be enforced by a court of equity, where one party has wholly and the other partly performed it, and its nonfulfilment on the one hand would amount to a fraud on the party who has fully performed it." *Kofka v. Rosicky*, 41 Neb. 328. See *Davis v. Murphy*, 105 Neb. 839. And in *Harrison v. Harrison*, 80 Neb. 103, we likewise held: "The law is well settled in this state that an oral agreement to convey real estate will be specifically enforced where the evidence of such agreement is clear and satisfactory, and the plaintiff has fully performed on his part." See, also, *McNea v. Moran*, 101 Neb. 476; *Evans v. Kelly*, 104 Neb. 712; *Denesia v. Denesia*, 116 Neb. 789. "If such contract is definite, and is clearly proved, and substantial performance is proved by clear and unequivocal evidence, it has the same force as if written." *Parks v. Burney*, 103 Neb. 572. Courts will compel specific performance of an oral contract to convey specified real estate in consideration of personal care to be given to the owner during the remainder of his natural life, when the terms of the contract are fair and reasonable and the evidence to establish such contract and its performance is clear, satisfactory and convincing.

The judgment is

AFFIRMED.