NELL CRAIG ET AL., APPELLEES, V. HELEN BREEN SEEBECKER
ET AL., APPELLANTS.
280 N. W. 913

FILED JULY 2, 1938. No. 30403.

*D. M. Kelleher* and *E. F. Leary*, for appellants.

*James T. English, Crofoot, Fraser, Connolly & Stryker*
and *Wear, Boland & Nye, contra.*

Heard before ROSE, EBERLY, DAY, PAINE, CARTER and
MESSMORE, JJ., and KROGER, District Judge.

CARTER, J.

This is a suit brought by the plaintiffs, Nell Craig and
Catherine Craig, for specific performance of an oral con-
tract alleged to have been made with John P. Breen, de-
ceased, whereby Breen in his lifetime promised to will all
his property to plaintiffs if they would remain in Omaha
until his death and provide him a home as they had done
in the past. Plaintiffs claim that they fulfilled their part

of the contract, but that Breen died without making any arrangements whereby his property vested in them. The trial court granted the prayer of plaintiffs' petition and decreed them to be the owners of all the property of the deceased, John P. Breen. From this decree an appeal has been taken to this court by certain of the defendants.

The deceased, John P. Breen, was a bachelor. He practised law in the city of Omaha for more than 50 years, and at the time of his death on May 31, 1937, was 83 years of age. His estate consisted of an undivided interest in a residence property in Fort Dodge, Iowa, and personal property, principally consisting of cash on deposit in a bank, inventoried at $57,844.81. No will was ever found. The heirs at law of John P. Breen are two surviving sisters, Jane Brady and Mollie Breen, and three groups of nephews and nieces, the children of two deceased brothers and a deceased sister. The plaintiffs are the daughters of Ellen M. Craig, a deceased sister.

The record discloses that Ellen M. Craig and the plaintiffs lived in Omaha for many years prior to the death of John P. Breen. During that time Breen made his home with the Craigs. On December 10, 1928, Ellen M. Craig died, and it is alleged that, following her death, the plaintiffs contemplated removing to California where their brother, Robert Craig, resided. It is at this time that the alleged oral agreement was entered into between the plaintiffs and John P. Breen. The evidence is not disputed that the plaintiffs remained in Omaha, continued the same relationship with Breen that had existed up to the time of the death of Ellen M. Craig, and that such relationship continued until the death of Breen.

The record further discloses that one of the plaintiffs, Nell Craig, was a school-teacher and that she followed that profession during all the times herein mentioned. The other plaintiff, Catherine Craig, was employed at office work for some time, but, due to the condition of her health, gave up her position and assumed the active management of the home. The record shows that Breen contributed to

the expense of maintaining the home, at least to the extent of paying the rent and buying the fuel. The relationship between Breen and plaintiffs was at all times very friendly and cordial. He was friendly with some of the other heirs whom he visited occasionally, while others were practically strangers to him.

Much evidence was offered by the parties on the question whether the oral contract was made as alleged. The record is long, but we feel that the following is a fair summary of the evidence on that subject:

Robert Craig, a brother of plaintiffs, testified that several days after his mother, Ellen M. Craig, passed away in December, 1928, plaintiffs were contemplating breaking up their home and going to California, but they were dissuaded from so doing by their uncle, who said they had been together too long to separate and that if they would stay and keep up the home he would leave them his property. On another occasion, Craig was visiting plaintiffs when one of them was ill. At that time he testifies that Breen told him that he was not to worry "about the girls because you know when I die they will get everything I have."

John White, a painter and decorator, who saw Breen often during several years while he was working on the Douglas county courthouse, testified to a conversation with Breen, in part as follows: "I says, 'You are lucky to have a couple daughters, and girls at home to take care of you at your old age.' 'They are not my daughters, they are nieces.' 'Gee whiz, I thought they were your daughters all the time.' 'No, they are my nieces; they always kept the home for me;' and I says, 'You are sure lucky with two girls like that, never got married, and stay home and take care of you.' 'Well, I guess I am,' he says, 'They are sure giving me a good home, when I go they will always have a home, I will give them all I got, what I got is theirs.'"

Thomas Murray, a lawyer who was well acquainted with Breen, testified to the following conversation with him: "I think I asked him if he was still living with his nieces since the death of his sister in 1928, and he said, 'Indeed

I am, I am going to live with them until the end of my life.' He said, 'They are doing a lot for me; they are carrying a considerable load, but they are going to have their reward, because whatever I have when I die they are going to have.' "

Another witness, Mrs. Azelma R. Whitacre, testified that Breen told her, in speaking of his nieces: "Well, after I am gone they will have plenty." In respect to the purchase of an automobile by one of the plaintiffs, Breen also told her: "Well, they might as well have the car now, they will get it later anyhow."

Charles E. Foster, former district judge, testified to the following conversation with Breen: "Yes, on several occasions he would talk about his home, what a nice place he had, and what a nice home he had to live in, and he says, 'My nieces keep house.' He says, 'They want to leave, but I told them I would like to have them stay,' and he said, well, he says,—I says, 'What are they staying around here for?' and he says, 'Well, that is all right,' he says, 'I will take care of them; if they stay I will see that they have a good home afterwards, and when I am gone.' "

Many other witnesses were called who testified to statements made by Breen which showed the high regard he had for these plaintiffs for what they had done for him, especially in providing him a fine home. Many of the statements indicated an intent on his part to take care of them after he was gone and to see that they were amply provided for after his death. Without any intention of unduly simplifying the facts in the record, we think the foregoing is a fair statement of the evidence adduced on the question whether a contract was made.

Appellants contend that the evidence of Robert Craig was incompetent and that the trial court erred in not excluding it. The objection to it was based on the provisions of section 20-1202, Comp. St. 1929, which in part provides: "No person having a direct legal interest in the result of any civil action or proceeding, when the adverse party is the representative of a deceased person, shall be permitted

to testify to any transaction or conversation had between the deceased person and the witness." It will be noted in the instant case that Robert Craig has no direct legal interest in the result of this litigation. In fact, if plaintiffs prevail he will lose the share of the estate to which he would be entitled as an heir. His interests, instead of being adverse to the defendants, are identical with theirs.

In *Geise v. Yarter*, 112 Neb. 44, 198 N. W. 359, this court said: "The question, then, is whether or not Anthony had any legal interest in the controversy between plaintiff and Bills adverse to Bills or his representative. As stated thus it seems perfectly clear that any interest which Anthony had was in the success of Bills, and not adverse to him, because, if the plaintiff in this action were defeated, Anthony would be entitled to receive at least the sum to his credit, to wit, $5,232, and perhaps the value of the coupons deducted from the proceeds of the mortgage. In an action by Anthony against the executrix and Cline to recover these amounts, it is probable Anthony's evidence would be incompetent, but that is a different question. The same observations dispose of the objection on account of Cline, the surviving partner, being a representative within the meaning of the statute. As a witness in the case of plaintiff *versus* the representatives of Bills and Cline, Anthony had no interest adverse to such representatives."

In *Anderson v. Estate of Akins*, 99 Neb. 630, 157 N. W. 334, we said: "The plaintiff's mother testified in his behalf, and the defendant objected that she was incompetent as a witness under section 7894, Rev. St. 1913. This witness, as one of the heirs of the deceased, had a direct legal interest in the result of the litigation, but that interest was not adverse to the representatives of the deceased, and therefore did not disqualify her as a witness. *Hageman v. Estate of Powell*, 76 Neb. 514."

In *Nelson v. Nelson*, 133 Neb. 458, 275 N. W. 829, we said: "The witness Mildred Watson is not a party to this litigation, has no interest in the alleged claim of the administrator, plaintiff, or in the defense of her mother, de-

fendant; nor has she a direct legal interest in the property of her mother, as far as it may or may not be affected in this action. The administrator has no interests adverse to this witness. In no event, under her testimony in this case, can this witness profit, which constitutes the main and essential test as to competency of the witness, under section 20-1202, Comp. St. 1929. See *Hageman v. Estate of Powell*, 76 Neb. 514, 107 N. W. 749; *Oft v. Ohrt*, 128 Neb. 848, 260 N. W. 571; *Lyon v. Ricker*, 141 N. Y. 225, 36 N. E. 189."

It is clear that the success of the plaintiffs in this litigation would bring no direct benefit to the witness Robert Craig. He, having no direct interest in the result of the suit that is adverse to the representatives of John P. Breen, is a competent witness to testify to conversations held with Breen that are pertinent to the determination of the issues involved.

It has long been the law in this state that a court of equity will grant specific performance of an oral contract to leave property to another, where the terms of the contract are established by evidence that is clear, convincing and satisfactory, and where it has been fully performed by one party and its nonfulfilment would amount to a fraud on that party.

In *Rogers v. Casady*, 134 Neb. 227, 278 N. W. 267, we recently said: "Where it is sought to enforce an oral agreement of a person now deceased to convey or devise lands, the proof to establish the circumstances of such oral agreement must be clear, satisfactory and convincing."

In *Weber v. Crabill*, 123 Neb. 88, 242 N. W. 267, we said: "We have held that 'Specific performance of a parol contract will be enforced by a court of equity, where one party has wholly and the other partly performed it, and its nonfulfilment on the one hand would amount to a fraud on the party who has fully performed it.' *Kofka v. Rosicky*, 41 Neb. 328. See *Davis v. Murphy*, 105 Neb. 839. And in *Harrison v. Harrison*, 80 Neb. 103, we likewise held: 'The law is well settled in this state that an oral agreement to convey real estate will be specifically enforced where the

evidence of such agreement is clear and satisfactory, and the plaintiff has fully performed on his part.' See, also, *McNea v. Moran,* 101 Neb. 476; *Evans v. Kelly,* 104 Neb. 712; *Denesia v. Denesia,* 116 Neb. 789. 'If such contract is definite, and is clearly proved, and substantial performance is proved by clear and unequivocal evidence, it has the same force as if written.' *Parks v. Burney,* 103 Neb. 572. Courts will compel specific performance of an oral contract to convey specified real estate in consideration of personal care to be given to the owner during the remainder of his natural life, when the terms of the contract are fair and reasonable and the evidence to establish such contract and its performance is clear, satisfactory and convincing."

In *Overlander v. Ware,* 102 Neb. 216, 166 N. W. 611, this court said: "In an action for specific performance of an oral agreement with a deceased person to convey land, *held,* that not only must the terms of the contract be established by evidence that is clear, satisfactory and unequivocal, but the work constituting the performance required under the statute of frauds must be such as is referable solely to the contract sought to be enforced, and not such as might reasonably be referable to some other and different contract or relation. Nothing will be considered as part performance which does not put the party into a situation which is a fraud upon him unless the agreement be fully performed. Equity interferes only to prevent fraud or unconscionable advantage." And, in affirming the decision of the trial court, the court in its opinion said: "We are of opinion that the evidence shows that, at the time Clark was married and was about to live with his wife apart from Kelly, it was agreed that if he would continue to live with Kelly he should have the 80 acres of land, the title to which was quieted in him by the trial judge."

Also, in the case of *Peterson v. Bauer,* 83 Neb. 405, 119 N. W. 764, this court said: "An oral contract to adopt the daughter of a stranger and leave her property by will may be enforced by specific performance, where she has fully performed her part and established the agreement by clear

and satisfactory evidence. * * * Whether an oral contract to devise realty shall be enforced by specific performance after it has been performed by plaintiff depends upon the facts and circumstances of each case."

The question remaining is whether the evidence was sufficient to establish by clear, satisfactory and convincing evidence that the oral agreement was made and that the plaintiffs fulfilled their part of the agreement so as to entitle them to specific performance of the same.

We are convinced that there is sufficient evidence in the record to sustain the oral agreement. We have heretofore recited the evidence of a number of witnesses who testify to statements made by Breen that such an agreement had been made. Many other witnesses testify to statements tending to corroborate this evidence. It is not denied that plaintiffs remained with the deceased, kept house for themselves and Breen, and cared for him in his declining years and up to the time of his death. Witnesses testify to statements made by Breen during his last sickness to the effect that the "girls" had always taken good care of him. There can be no question that the contract was carried out by them to the satisfaction of Breen himself. All of the evidence cannot be discussed without an opinion of unreasonable length. We have, however, examined each item of proof on both sides and its relation to every part of the record. After so doing, we have come to the conclusion that the oral agreement was made as alleged in plaintiffs' petition, that it has been fully performed by the plaintiffs and violated by the deceased, John P. Breen.

The following cases sustain this holding: *Bergfield v. Bergfield,* 124 Neb. 67, 245 N. W. 12; *Harrison v. Harrison,* 80 Neb. 103, 113 N. W. 1042; *Johnson v. Riseberg,* 90 Neb. 217, 133 N. W. 183; *Damkroeger v. James,* 95 Neb. 784, 146 N. W. 936.

The trial court was not in error in entering a decree of specific performance for plaintiffs and its judgment will therefore be

AFFIRMED.