JOHN PETERSON, APPELLANT, V. ROBERT G. PETERSON ET AL., APPELLEES.

63 N. W. 2d 858

Filed April 16, 1954. No. 33499.

*Edwin T. Mars* and *John C. Mullen,* for appellant.

*Merrow & Murphy* and *Fraser, Connolly, Crofoot & Wenstrand,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

John Peterson brought this action in the district court for Douglas County against the executors of, the trustees under, and the devisees and legatees named in the last will and testament, and codicil thereto, of Edward Peterson, deceased, which last will and testament, and codicil thereto, had been allowed and admitted to probate by the county court of Douglas County. The purpose of the action is to enforce an alleged oral agreement claimed to have been entered into by and between the plaintiff and deceased. After a trial the court found generally for the defendants and dismissed plaintiff's action. Plaintiff thereupon filed a motion for new trial and has taken this appeal from the overruling thereof.

Appellant alleges:

"That on or about the 14th day of October, 1931, Ed-

ward Peterson and John Peterson made an oral agreement, the terms of which are as follows, to-wit:

"That John Peterson release any and all claims or refrain from the prosecution of any claims he may have against Edward Peterson for and by virtue of the loss of his leg and subsequent disability.

"That John Peterson be and act as a companion to said Edward Peterson and perform such personal services as his physical condition might permit, for the duration of Edward Peterson's natural life.

"That in consideration of the foregoing the said Edward Peterson promised and agreed

"1. To provide for the financial requirements of said John Peterson, as to shelter, food, clothing and other expenses incidental to John Peterson's standard of living for the rest of said John Peterson's natural life.

"2. That said Edward Peterson further promised and agreed to make and execute a Last Will and Testament bequeathing and devising unto said John Peterson an amount of money or property, sufficient to provide for the support and maintenance of said John Peterson for the rest of his natural life, in the event that said Edward Peterson should pre-decease said John Peterson, in an agreed amount of $250.00 per month.

"3. To further devise and bequeath aforesaid to said John Peterson, a further sum of money to compensate said John Peterson for the loss of his leg, and for the pain and suffering he would be forced to endure, in the sum of $20,000.00.

"4. To further devise unto said John Peterson a home for himself or in lieu thereof to bequeath him a sum sufficient to purchase such home of the type and value of which said John Peterson had been accustomed to live while with his brother, Edward Peterson."

The last will and testament of Edward Peterson, deceased, together with the codicil thereto, contains no provision for the benefit of appellant to carry out the terms of this alleged agreement nor was any provision made

by the deceased during his lifetime for that purpose.

The district court has jurisdiction of an action for the specific performance of such a contract whether it is to be performed during the lifetime or by will. Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788, 43 Am. S. R. 685, 25 L. R. A. 207; Lacey v. Zeigler, 98 Neb. 380, 152 N. W. 792; Craig v. Seebecker, 135 Neb. 221, 280 N. W. 913; Peters v. Wilks, 151 Neb. 861, 39 N. W. 2d 793; Sopcich v. Tangeman, 153 Neb. 506, 45 N. W. 2d 478.

As held in Kofka v. Rosicky, *supra:* "Specific performance of a parol contract will be enforced by a court of equity, where one party has wholly and the other partly performed it, and its nonfulfillment on the one hand would amount to a fraud on the party who has fully performed it." See, also, Weber v. Crabill, 123 Neb. 88, 242 N. W. 267; Craig v. Seebecker, *supra.*

The case comes to this court for trial de novo. Casper v. Frey, 152 Neb. 441, 41 N. W. 2d 363; Sopcich v. Tangeman, *supra.*

Each case must, of course, be determined from the facts, circumstances, and conditions established by the evidence. Damkroeger v. James, 95 Neb. 784, 146 N. W. 936; Lunkwitz v. Guffey, 150 Neb. 247, 34 N. W. 2d 256; Peters v. Wilks, *supra;* Casper v. Frey, *supra;* Sopcich v. Tangeman, *supra.*

In this regard in Lunkwitz v. Guffey, *supra,* we have announced the following principles as applicable:

"Where one is claiming the estate of a person deceased under an alleged oral contract, the evidence of such contract and the terms of it must be clear, satisfactory and unequivocal.

"Such contracts are on their face void as within the statute of frauds, because not in writing, and, even though proved by clear and satisfactory evidence, they are not enforceable unless there has been such performance as the law requires.

"The thing done, constituting performance, must be such as is referable solely to the contract sought to be

enforced, and not such as might be referable to some other and different contract—something that the claimant would not have done unless on account of the agreement and with the direct view to its performance—so that non-performance by the other party would amount to fraud upon him.

"The burden in the light of this rule has devolved upon the plaintiff (1) to prove an oral contract the terms of which are clear, satisfactory and unequivocal, and (2)· that his acts constituting performance were such as were referable solely to the contract sought to be enforced, and not such as might have been referable to some other or different contract."

See, also, Overlander v. Ware, 102 Neb. 216, 166 N. W. 611; Lintz v. Apking, 145 Neb. 714, 18 N. W. 2d 55; Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513; Casper v. Frey, *supra;* Nelson v. Glidewell, 155 Neb. 3̶72, 51 N. W. 2d 892; Flessner v. Wenquist, 156 Neb. 378, 56 N. W. 2d 294; Rush v. Heinisch, 157 Neb. 545, 60 N. W. 2d 608.

For the purpose of discussion we shall refer to appellant as John and to Edward Peterson, deceased, as Edward.

John, who was born October 20, 1882, started working for his older brother Edward when he was 15 years of age. Edward was then a contractor and continued in that business up until the time of his death on August 15, 1951. John continued to work on and off for Edward and did so even after he was hurt on September 14, 1931.

In 1931 Edward was a member of the contracting partnership of Peterson, Shirley and Gunther. That year this partnership obtained a contract for some grading on a highway located between Sheridan and Ucross, Wyoming. They sublet this work to L. A. Woodward and Company. John went to work for this subcontractor as a foreman and while working in that capacity on September 14, 1931, he caught his right foot in the chain of a caterpillar tractor. His right foot and leg were so

badly mangled that his right leg had to be amputated just below the knee.

Both employer and employee reported this accident to the clerk of the district court for Sheridan County, as apparently required under the Wyoming workmen's compensation law. On October 29, 1931, John made application and claim for an award for compensation under the workmen's compensation law of Wyoming setting forth L. A. Woodward and Company as his employer and stating that the accident to his right foot occurred while engaged in duties of that employment. The district court for Sheridan County found he was entitled to compensation because of the injury and, on December 24, 1931, awarded him the lump sum of $1,649.25. John assigned the benefits of this award to his employer, L. A. Woodward and Company. Who actually received payment thereof is not shown.

When John returned from the hospital at Sheridan, Wyoming, after his right foot had been amputated, he apparently lived with his sister, Mrs. Rose Holmes, at 502 North Forty-third Street, in Omaha, Nebraska, until sometime in 1938, except while he was working for Peterson, Shirley and Gunther in the Panama Canal Zone and when staying at the Henshaw Hotel while working for the Holmes Recreation Parlors. The partnership of Peterson, Shirley and Gunther had a part of a combination bid made and secured by W. A. Callahan Construction Company for work on Madden Dam in the Panama Canal Zone. This job lasted from the fall of 1931 to the fall of 1934. John worked on this construction work from January to May of 1933, and while doing so lived in one of the company's barracks located on the job. John worked for the Holmes Recreation Parlors in 1933, 1934, 1935, and 1936.

In May 1937 Edward bought a house located at 654 North Fifty-seventh Street in Omaha and he and his family moved into it shortly thereafter. It remained Edward's home until he died. Shortly after the Edward

Peterson family moved into this home John became one of the family, apparently moving in sometime in 1938. John remained a member of Edward's household until he married in September 1948, when he moved out. He apparently never returned. While John lived in Edward's home he was treated and accepted as a member of the family. The relationship between the two brothers appears to have been very close. During this period, from 1938 to September 1948, it appears Edward took care of all of John's needs.

We have examined the evidence adduced and fail to find any evidence of such a contract as John alleges he made. In fact there is no evidence of any contract. But assuming, just for the sake of discussion, that such a contract was made, we find no evidence of its performance by John. In fact the evidence adduced shows the conduct of John and Edward relates more to their relationship as brothers than to the contract which John here seeks to enforce. We think the evidence John adduced wholly fails to meet the requirements of what he was required to prove by clear, satisfactory, and convincing evidence.

In this respect we have not overlooked the testimony of John's numerous witnesses showing Edward's interest in John's welfare and of Edward's often expressed desire and intention to see that he (John) was amply provided for after his (Edward's) death. But all testimony of this character is only evidence of a testamentary intention and, having no relation to any legal agreement or contract and being therefore without consideration, could be abandoned by Edward at any time.

In view of the foregoing we affirm the action taken by the trial court.

AFFIRMED.