HAROLD GRIGGS, APPELLEE, v. MAE OAK ET AL., APPELLANTS.
MAE OAK, APPELLANT, v. HAROLD GRIGGS, APPELLEE.

82 N. W. 2d 410

Filed April 12, 1957. No. 34159.

*Max Marshall,* for appellants.

*Kenneth M. Olds,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

WENKE, J.

This is an appeal from the district court for Dixon County. It involves two separate actions filed in that court which were consolidated for the purpose of trial and appeal. The first action, instituted on August 20, 1955, by Harold Griggs against Mae Oak and her husband, Clifford J. Oak, seeks to have specifically performed an alleged oral agreement with Mae Oak to give him a 3-year lease on two certain unimproved lots located in Wakefield, Nebraska, owned by her and described as Lots 6 and 7, Block 2, Anderson's Addition to the Village of Wakefield, Dixon County, Nebraska. The second action, instituted on August 24, 1955, by Mae Oak against Harold E. Griggs, who is the same person who, as Harold Griggs, instituted the first action, seeks to have the defendant therein ejected from these same premises; to recover from him all damages he caused thereto and to a crop of alfalfa hay growing thereon; to recover for the use of the property; and to enjoin him from removing any improvements that he has placed thereon.

Harold Griggs died on March 21, 1956, and thereafter both actions were revived in the name of Geneva Griggs, as administratrix of his estate. For convenience we shall hereinafter refer to decedent as Griggs.

On July 26, 1956, the trial court decreed specific performance of the alleged oral lease for the 3-year period claimed by Griggs in the action he instituted, being from June 4, 1955, to June 4, 1958, and dismissed the action of ejectment instituted by Mae Oak. Mae Oak filed a motion for new trial in both actions and, from the overruling thereof, appeal was taken to this court.

The record shows the parties waived a jury trial and therefore appellee claims the trial court's findings have the same effect as a verdict of a jury. An action for specific performance is one in equity. Mainelli v. Neuhaus, 157 Neb. 392, 59 N. W. 2d 607; Bauer v. Bauer,

136 Neb. 329, 285 N. W. 565. Consequently we will consider the record de novo as it relates thereto. On the other hand an action in ejectment is one in law. Abbas v. Demont, 152 Neb. 77, 40 N. W. 2d 265. Consequently the court's findings as they relate thereto will not be set aside unless clearly wrong. Farmers Union Fidelity Ins. Co. v. Farmers Union Co-Op. Ins. Co., 147 Neb. 1093, 26 N. W. 2d 122.

The first question presented is, was there a contract entered into between the parties for a 3-year lease?

The record shows appellant Mae Oak, whom we shall hereinafter refer to as Mrs. Oak, owned the lots hereinbefore described. She, with her husband, Clifford J., resided in Gardena, California. By letter dated May 19, 1952, Mrs. Oak advised Walter L. Moller, an insurance and real estate agent in Wakefield, Nebraska, that she was very anxious to sell the lots she owned in Wakefield and any arrangements which her father, Wilber Evans, made with him in regard thereto would be satisfactory with her. Her father lived in Wakefield. The evidence shows the father contacted Moller on several occasions for the purpose of getting him to try to find a buyer. Moller endeavored to do so and, in his endeavors, contacted Griggs. Although interested in buying the property Griggs advised Moller he could not finance the purchase thereof but would be interested in leasing it. Griggs suggested to Moller a rental of $75 per year and a lease covering more than 1 year.

On June 3, 1955, Moller called Mrs. Oak on the telephone at her home in Gardena, California, and informed her of his opportunity to lease her lots, asking if she was interested in doing so. Mrs. Oak, in her conversation with Moller, authorized him to lease her lots for a period of 1 year at a rental of $100, payable in equal semi-annual installments, that is, he was to write up a lease to that effect and mail it to her. Moller immediately advised Griggs thereof but no lease for 1 year was ever prepared. However, on or before June 4, 1955, Griggs

apparently went into possession of the lots and started to make the necessary improvements thereon for a trailer court. The improvements included piping in water and gas, laying sewer lines, putting in wiring for electricity, and building a utility building. This is evidenced by the statements of Harry H. Cruickshank and Lee Swinney. In fact Swinney states his books show that on June 4, 1955, Griggs gave him a check in the amount of $87.25 for 349 feet of waterline trench he had dug.

On June 7, 1955, Griggs told Moller the improvements he was planning to make on the property would cost more than he had anticipated and, on the basis of a 1-year lease, did not think he could get his money back. In view thereof he asked Moller to call Mrs. Oak and attempt to get a lease for 5 years. That evening Moller called Mrs. Oak on the telephone at her home in California and advised her of the foregoing. On the basis thereof he attempted to negotiate a 5-year lease, but failed. He did, however, get her to give him authority to enter into a 3-year lease on the same annual rental terms, Mrs. Oak telling him to prepare and send out such a lease. Moller prepared such a lease, running from June 4, 1955, to June 4, 1958, at an annual rental of $100 payable semiannually but, at the insistence of Griggs, put the following option therein: "AND IT IS FURTHER AGREED, That the party of the first part grants unto the party of the second part an Option to Purchase the above described property at the expiration of the lease for the price of $1,000.00 plus any paving assessments not yet due on the said property, and that any rents which have been paid by the party of the second part to the party of the first part shall be applied toward the purchase price of the property."

By letter dated June 8, 1955, which Mrs. Oak acknowledged receiving, Moller sent her 2 copies of this lease signed by Griggs together with Griggs' check for $50 covering the first semiannual payment of rent. Mrs. Oak replied to this letter on June 11, 1955, advising

Moller the lease, with the option clause, was unacceptable and returned the lease and check. However, therein she advised Moller that: "* * * if the lease is written for a term of three years at $100.00 per year a clause to this effect must be inserted: that the party of the second part agrees to expend not less than $250.00 in connecting with sewer and erecting a utility building which shall be left on the property at expiration of the lease; with no option whatsoever." Moller acknowledged receiving this letter about June 13, 1955, and advising Griggs thereof. However, no lease was ever prepared containing this provision. Griggs continued to remain in possession of the property and continued with the improvemnts he was making thereon.

Meanwhile Griggs apparently found a way whereby he could finance the purchase of the property for he had Moller try to negotiate a purchase thereof. Moller called Mrs. Oak on the telephone for this purpose on June 15, 1955. She, at that time, informed Moller she was no longer agreeable to either a sale or lease of the premises or to anything else. Moller then advised Mrs. Oak of the improvements Griggs had placed on her property.

A few minutes after this call by Moller on June 15, 1955, Griggs called Mrs. Oak and tried to persuade her to sign a lease, which she refused, saying she was not going to do business with him. He then told her of the improvements he had put on her property. She advised him not to do anything further on the property. Thereafter, on June 17, 1955, Harry N. Larson, a lawyer at Wakefield, wrote Mrs. Oak on behalf of Griggs trying to buy her property, which offer she rejected.

During these negotiations, and for some time thereafter as is evidenced by the bills and statements for material and labor, Griggs continued to improve this property, putting in the improvements already referred to at a total cost of over $1,000.

Section 36-105, R. R. S. 1943, provides: "Every con-

tract for the leasing for a longer period than one year, or for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made."

In respect to this statute, correspondence between parties, if sufficient, can satisfy the requirements thereof providing the contract shall be void "unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made." See, also, Heenan & Finlen v. Parmele, on rehearing, 80 Neb. 514, 118 N. W. 324.

Also, as stated in Campbell v. Kewanee Finance Co., 133 Neb. 887, 277 N. W. 593: "An oral contract partly performed, which the statute of frauds requires to be in writing, will be enforced by a court of equity." See, also, Sage v. Shaul, 159 Neb. 543, 67 N. W. 2d 921.

"The burden in the light of this rule has devolved upon the plaintiff to prove (1) an oral contract the terms of which are clear, satisfactory, and unequivocal, and (2) that his acts constituting performance were such as were referable solely to the contract sought to be enforced, and not such as might have been referable to some other or different contract." Peterson v. Peterson, 158 Neb. 551, 63 N. W. 2d 858. See, also, Crnkovich v. Crnkovich, 144 Neb. 904, 15 N. W. 2d 66; Caspers v. Frerichs, 146 Neb. 740, 21 N. W. 2d 513; Lunkwitz v. Guffey, 150 Neb. 247, 34 N. W. 2d 256.

It is well settled by these and other decisions of this court that before there can be specific performance of an oral contract coming under this statute, because of acts constituting performance, the contract itself must be proved.

"To establish an express contract there must be shown what amounts to a definite proposal and an unconditional and absolute acceptance thereof." Melick v. Kelley, 53 Neb. 509, 73 N. W. 945. See, also, Beskas v. Calkins, 135 Neb. 323, 281 N. W. 29; Farmers Union

Fidelity Ins. Co. v. Farmers Union Co-Op. Ins. Co., *supra;* Standard Oil Co. v. O'Hare, 126 Neb. 11, 252 N. W. 398.

"The acceptance of an offer * * * must be an unconditional acceptance of the offer as made; otherwise no contract is formed. There must be no substantial variation between the offer and the acceptance. If the acceptance differs from the offer or is coupled with any condition that varies or adds to the offer, it is not an acceptance, but is a counterproposition." Anderson v. Stewart, 149 Neb. 660, 32 N. W. 2d 140, 3 A. L. R. 2d 250.

"Where one, to whom an offer is made, makes a counterproposition of different terms and new conditions, such counterproposition amounts to a rejection of the offer." Farmers Union Fidelity Ins. Co. v. Farmers Union Co-Op. Ins. Co., *supra.*

However, an acceptance can be shown by conduct or by performance communicated to the promisor. Siebring Mfg. Co. v. Carlson Hybrid Corn Co., 246 Iowa 923, 70 N. W. 2d 149; Johnson v. M. J. O'Neil, Inc., 182 Minn. 232, 234 N. W. 16. But such would not be effective if the offer sought to be performed was, in fact, rejected.

The record shows the first offer made by Mrs. Oak to Griggs was for a 1-year lease. Although Griggs went into possession and started to make improvements on the property immediately thereafter it is self evident he did not accept this offer for he does not here seek to obtain a lease for 1 year. In fact, when he discovered what the improvements for a trailer court would cost, he asked Moller to negotiate for a longer lease. This Moller did, obtaining from Mrs. Oak an offer of a 3-year lease with the terms of an annual rental of $100 payable in semiannual installments. This is apparently the offer appellee is here seeking to have specifically enforced. However Griggs rejected this offer when he insisted that the lease contain the option herein-

before set forth. Mrs. Oak rejected this counterproposal by Griggs but again offered to lease the property for 3 years but in this offer included the provisions hereinbefore set forth from her letter of June 11, 1955. Griggs never accepted this offer and, in fact, rejected it when, on June 15, 1955, he had Moller attempt to negotiate a purchase of the property. At that time Mrs. Oak withdrew all offers to lease the property, which she had a right to do, as none of them had been unconditionally accepted. We do not think the correspondence is such that it creates a contract between the parties leasing the property to Griggs. Neither do we think Griggs accepted Mrs. Oak's offer for a 3-year lease or any other offer to lease. In fact, we think the record discloses he rejected all offers and he, and his successors, have, at all times, been occupying the property of Mrs. Oak without any right to do so. In view of this finding we think the trial court was clearly wrong in denying to Mrs. Oak, in her action, some of the relief she prayed for therein. We think she is entitled to the immediate possession of her property and to have appellee enjoined from removing any of the improvements that have been placed thereon, including those placed thereon in either April or May 1956. In addition thereto she is entitled to recover for the use of the premises at the rate of $100 per year, which we find is the reasonable value for the use thereof, from June 4, 1955, until she is placed in possession thereof. However, she should be denied any damages for the alleged crop of alfalfa growing thereon in 1955, which she claims was destroyed, or for damages to the lots by reason of a roadway that was placed thereon because the proof adduced in relation thereto was insufficient upon which to base the allowance of any damages for either of these items.

We reverse the judgments of the trial court in both actions and remand the causes with directions to it to enter a proper decree in each in accordance with our

holding and directions herein set forth. All costs are to be taxed to appellee in both cases.

REVERSED AND REMANDED WITH DIRECTIONS.